**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: 1:23-cv-21912-FAM

DANIEL HARPER, on behalf of himself
and all others similarly situated,

      plaintiff,

v.

SHAQUILLE O'NEAL,

      defendant.

_____/

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

i

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER RULE 12(b)(1) ................................................................... 3

        A. Plaintiff Lacks Standing to Pursue the Federal Securities Act Claims, Which Divests the Court of Supplemental Jurisdiction Over the State Law Claims ......... 4

        B. Plaintiff Lacks Standing to Pursue Florida Claims for Himself and the Purported Florida Subclass ................................................................................... 6

        C. Plaintiff Lacks Standing to Pursue the VCPA Claim ....................................... 7

    II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE ASTRALS ARE NOT SECURITIES SUBJECT TO FEDERAL (OR STATE) SECURITIES LAWS ................ 9

        A. The Complaint's Allegations Fail the *Howey* Test ......................................... 13

        B. Plaintiff Failed to Plead an Investment of Money ........................................... 13

        C. Plaintiff Failed to Plead Sufficient Facts Showing a Common Enterprise ...... 15

        D. Plaintiff Failed to Plead Facts Sufficient to Show a Reasonable Expectation of Profits ................................................................................................................ 16

        E. Plaintiff Failed to Plead the Essential Efforts of Others ................................. 18

    III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE LEGALLY SUFFICIENT CLAIMS ................................................................................. 19

        A. Plaintiff Failed to Adequately Allege a Section 12 Violation Because Mr. O'Neal is Not a Seller and the Complaint Asserts Time-Barred Claims .............. 19

            1. Mr. O'Neal is Not a "Seller" Under Section 12(a)(1) and Therefore Could Not Have Violated Section 5 ........................................................................ 20

            2. Certain of Plaintiff's Section 12(a)(1) Claims are Time-Barred .......... 21

B. Even if Plaintiff had Adequately Alleged a Section 12(a)(1) Claim in Count I, Count II Still Would Require Dismissal Because the Control Person Allegations Under Section 15 are Legally Insufficient .............................................................. 22

C. The Court Should Dismiss Count III and Count IV Because Mr. O'Neal is Not a "Seller" Subject to Liability Under FSIPA, and Because FDUTPA Does Not Apply to Securities Claims ................................................................................... 23

    1. Plaintiff's FSIPA Claim Fails Because Mr. O'Neal is Not a Seller and The Purchase and Sale Did Not Take Place in Florida ............................. 23

    2. Plaintiff's FDUTPA Claim Fails Because FDUTPA Does Not Apply to Securities Claims, and Even if it Did, the Complaint Still Would Fail to State a Claim ............................................................................................. 25

D. The Complaint Failed to Adequately Allege the Virginia State-Law Claims, Requiring Dismissal of Count V And Count VI ...................................................... 29

    1. Plaintiff's Virginia Securities Act Claim is Legally Insufficient .......... 29

    2. Plaintiff's Virginia Consumer Protection Act Claim Fails to Allege Any Fraud, Let Alone Satisfy Rule 9(b) ......................................................... 30

CONCLUSION ............................................................................................................ 32

REQUEST FOR HEARING ........................................................................................ 32

CERTIFICATE OF SERVICE .................................................................................... 32

## **TABLE OF AUTHORITIES**

**Cases**

*Allen v. Oakbrook Sec. Corp.*, 763 So. 2d 1099 (Fla. 4th DCA 1999) .......................................... 25

*Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009 (M.D. Fla. 2019) ..................... 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 19

*Atocha Ltd. P'ship v. Witness Tree, LLC*, 65 Va. Cir. 213 (Va. Cir. 2004).................................. 30

*B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*,

    2017 WL 8751753 (S.D. Fla. 2017) ................................................................................... 26

*Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342 (11th Cir. 1997) ................................... 5

*Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007) .............................................................. 3

*Bazemore v. Epps*, 54 Va. Cir. 305 (Va. Cir. 2001)..................................................................... 29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 19, 29

*Bell v. Broad Mgt. Grp., LLC*, 2022 WL 18779106 (S.D. Fla. 2022) ........................................... 6

*BHR Recovery Communities, Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416 (E.D. Va. 2018) ....... 30

*Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878 (M.D. Fla. 2012)......................................... 28

*Borg v. Warren*, 545 F. Supp. 3d 291 (E.D. Va. 2021) ............................................................... 31

*Brown v. Enstar Grp., Inc.*, 84 F.3d 393 (11th Cir. 1996)........................................................... 22

*Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809 (E.D. Va. 2015)....................................... 31

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016)..................................................... 26

*Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340 (S.D. Fla. 2017)... 26

*Coldstone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565 (11th Cir. 2009) ............. 26

*Cooper v. GGGR Inv., LLC*, 334 B.R. 179 (E.D. Va. 2005) ....................................................... 31

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019)....................................................... 3

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)................................................................... 3

*Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366 (S.D. Fla. 2015) ............................................ 28

*Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496 (5th Cir. 1990) ...................................................... 5, 23

*Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307 (M.D. Fla. 2005) .......................................... 24

*Eberhardt v. Waters*, 901 F.2d 1578 (11th Cir. 1990) .......................................................... 15, 16

*Ehlert v. Singer*, 245 F.3d 1313 (11th Cir. 2001) ........................................................... 5, 22, 23

*Fedance v. Harris*, 1 F.4th 1278 (11th Cir. 2021) .................................................................. 22

*Feldman v. BRP US, Inc.*, 2018 WL 8300534 (S.D. Fla. 2018) .................................................. 7

*Feng v. Walsh*, 2021 WL 8055449 (S.D. Fla. 2021) ............................................................... 26

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276 (11th Cir. 2007) ...................................... 14

*Freidus v. Barclays Bank PLC*, 734 F.3d 132 (2d Cir. 2013) .................................................... 4

*Friel v. Dapper Labs, Inc.*, 2023 WL 2162747 (S.D.N.Y. 2023) ........................................... 11, 12

*Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276 (Fla. 4th DCA 1998) ...................... 27

*Glenn W. Turner Enter., Inc.*, 474 F.2d 476 (9th Cir. 1973) .................................................... 18

*Goldstein v. Firer*, 2022 WL 17343638 (S.D. Fla. 2022) ........................................................ 25

*Goode v. City of Philadelphia*, 539 F.3d 311 (3d Cir. 2008) .................................................... 8

*Gordon v. Terry*, 684 F.2d 736 (11th Cir. 1982) ................................................................. 18

*Greenfield Children's P'ship v. Friendfinder Networks, Inc.*,

    2014 WL 12205997 (S.D. Fla. 2014) ............................................................................ 5

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999) ............................................................ 14

*HCM High Yield Opportunity Fund, LP v. Skandinaviska Enskilda Banken AB*,

    2001 WL 36186526 (S.D. Fla. 2001) ............................................................................ 25

*Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354 (S.D. Fla. 2012) ............................................ 27

*Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937 (Fla. 3d DCA 1987) .................................... 28

*Hyden v. CH3 Sols., LLC*, 2021 WL 6332793 (E.D. Tenn. 2021) ............................................... 9

v

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326 (S.D.N.Y. 2021) ...................... 11

*In re BitConnect Sec. Litig.*, 2019 WL 9104318 (S.D. Fla. 2019) ......................................... 4, 6, 16

*In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010) ....................... 7

*In re CNL Hotels & Resorts*, 2005 WL 2291729 (M.D. Fla. 2005) ............................................ 21

*In re Ethereummax Inv. Litig.*, 2022 U.S. Dist. LEXIS 220968 (C.D. Cal. 2022) ...................... 27

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) .............................. 7

*In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257 (11th Cir. 2016) ........................... 22

*In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 1266609 (S.D. Fla. 2016) .............................. 7

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001) ............... 7

*In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353 (S.D. Fla. 2001) .................................. 4

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*, 224 So. 3d 316 (Fla. 5th DCA 2017)............. 23, 24

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) ................................................ 8

*Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000).......................................................................... 4

*Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687 (S.D. Fla. 2016) .................................................... 27

*Lewis v. Casey*, 518 U.S. 343 (1996)......................................................................................... 6

*Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183 (S.D. Fla. 2021) ................................ 3

*Licht v. Watson*, 567 F. App'x 689 (11th Cir. 2014) ..................................................................... 4

*Long v. Shultz Cattle Co., Inc.*, 881 F.2d 129 (5th Cir. 1989) ...................................................... 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................... 3

*Maceda v. City Watch Protective Servs., Inc.*, 2019 WL 1385087 (S.D. Fla. 2019)................... 29

*Maines v. Guillot*, 2016 WL 3556258 (W.D. Va. 2016) ............................................................. 30

*Mancilla v. GR OPCO, LLC*, 2022 WL 3017334 (S.D. Fla. 2022)................................................ 5

*Marine Bank v. Weaver*, 455 U.S. 551 (1982)........................................................................... 11

*Mechigian v. Art Cap. Corp.*, 612 F. Supp. 1421 (S.D.N.Y. 1985)............................................... 2

*Nationwide Mut. Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502 (E.D. Va. 2011) ................... 31

*Notorious B.I.G. LLC v. Yes. Snowboards*, 2022 WL 2784808 (C.D. Cal. 2022) ...................... 11

*Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298 (11th Cir. 2022) ...................... 30

*Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182 (11th Cir. 2002) ................................................ 19

*Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262 (S.D. Fla. 2003) .................................................... 7

*Phillips v. Kaplus*, 764 F.2d 807 (11th Cir. 1985) ......................................................................... 15

*Pinnacle Foods of Cal., LLC v. Popeyes La. Kitchen, Inc. Rest. Brands Int'l, Inc.*,

    2022 WL 17736190 (S.D. Fla. 2022) ....................................................................................... 27

*Pinter v. Dahl*, 486 U.S. 622 (1988) ............................................................................... passim

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773 (Fla. 2003) ........................................... 26

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000) ........................................ 6

*Raiford v. Buslease, Inc.*, 825 F.2d 351 (11th Cir. 1987) ............................................................. 19

*Rensel v. Centra Tech, Inc.*, 2018 WL 4410110 (S.D. Fla. 2018) ............................................ 4, 5

*Rensel v. Centra Tech, Inc.*, 2019 WL 2085839 (S.D. Fla. 2019) ................................................ 20

*Revak v. SEC Realty Corp.*, 18 F.3d 81 (2d Cir. 1994) ................................................................ 15

*Rice v. Branigar Org., Inc.*, 922 F.2d 788 (11th Cir. 1991) ......................................................... 17

*Rogers v. CISCO Sys., Inc.*, 268 F. Supp. 2d 1305 (N.D. Fla. 2003) ......................................... 25

*Rogers v. Nacchio*, 2006 WL 7997562 (S.D. Fla. 2006) .............................................................. 25

*Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. 2d DCA 2006) ..................................................... 27

*Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. 3d DCA 1984) ....................................................... 28

*Ryder Int'l Corp. v. First Am. Nat. Bank*, 943 F.2d 1521 (11th Cir. 1991) ............................ 4, 21

*SEC v. Aqua-Sonic Prods. Corp.*, 524 F. Supp. 866 (S.D.N.Y. 1981) ........................................ 17

*SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344 (1943) .............................................................. 9

*SEC v. ETS Payphones, Inc.*, 408 F.3d 727 (11th Cir. 2005) ................................................ 10, 13

*SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169 (S.D.N.Y. 2020)................................................ 10

*SEC v. Ripple Labs, Inc.*, No. 20-cv-10832-AT-SN (S.D.N.Y July 13, 2023).................. 1, 17, 18

*SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020)................................................ 10

*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946)........................................................... 2, 10, 13, 17

*Smith v. Am. Nat. Bank & Tr. Co.*, 982 F.2d 936 (6th Cir. 1992).................................................. 21

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .................................................................................. 8

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229 (11th Cir. 2008) ........ 3

*Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144  (7th Cir. 1984) ........................................... 16

*Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901 (W.D. Va. 2022) ................................ 30, 31

*Swenson v. Engelstad*, 626 F.2d 421 (5th Cir. 1980)..................................................................... 19

*Tcherepnin v. Knight*, 389 U.S. 332 (1967)................................................................................... 13

*Teamsters v. Daniel*, 439 U.S. 551 (1979).................................................................................... 13

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) .................................................................... 8

*Trilogy Props., LLC v. SB Hotel Assocs. LLC*, 2010 WL 7411912 (S.D. Fla. 2010).................. 22

*Turk v. Pershing LLC*, 2014 WL 12572906 (N.D. Tex. 2014)...................................................... 24

*United Hous. Found., Inc. v. Forman*, 421 U.S. 837 (1975) ........................................................ 14

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018)..................................................... 5

*Villeneuve v. Advanced Bus. Concepts Corp.*, 698 F.2d 1121 (11th Cir. 1983).......................... 15

*Warfield v. Alaniz*, 569 F.3d 1025 (9th Cir. 2009) ................................................................. 14, 17

*Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341 (11th Cir. 2022) ................................................. 20

*Woodward v. Terracor*, 574 F.2d 1023 (10th Cir. 1978)............................................................... 17

*Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216 (4th Cir. 2015)................................. 30

*Zalazar v. Capital Force, LLC*, 2023 WL 4186397 (S.D. Fla. 2023)........................................... 25

## **Statutes**

15 U.S.C. § 77b(a)(1) ............................................................................................... 9, 13

15 U.S.C. § 77l(a) .............................................................................................. 2, 4, 5, 19

15 U.S.C. §§ 77e ......................................................................................................... 2

15 U.S.C. §77o .................................................................................................... 2, 22

15 U.S.C.S. § 77m ..................................................................................................... 19

28 U.S.C. § 1332(a) ..................................................................................................... 6

28 U.S.C. § 1332(d)(2) ................................................................................................ 6

28 U.S.C. § 1367(c)(3) ....................................................................................... 5, 9, 29

Fla. Stat. § 501.202(3) ................................................................................................. 7

Fla. Stat. § 501.204(1) ............................................................................................... 25

Fla. Stat. § 517.07(1) ................................................................................................... 7

Fla. Stat. § 517.211(1) ............................................................................................... 23

Va. Code § 13.1-501, *et al.* ........................................................................................ 29

Va. Code § 13.1-507 ................................................................................................... 29

Va. Code § 13.1-514 ................................................................................................... 29

Va. Code § 13.1-522(A) ............................................................................................. 29

Va. Code § 59.1-196, *et al.* ........................................................................................ 29

Va. Code § 59-1.200(A) ............................................................................................. 30

## **Rules**

Fed. R. Civ. P. 9(b) ................................................................................ 28, 29, 30, 31

## **Constitutional Provisions**

U.S. Const. art. III, § 2 ............................................................................................... 3

## INTRODUCTION

Plaintiff Daniel Harper, a Virginian, has sued Shaquille O'Neal, a non-Floridian, for purported securities registration violations arising from Harper's purchase in Virginia of digital artwork (Astrals) from Astrals Project using cryptocurrency minted by Solana. The only connection this case has to Florida is a single, unsupported, conclusory allegation that Shaquille O'Neal is a control person of the seller, who "targeted" Floridians to buy Astrals and has a home in Davie, Florida. Plaintiff lacks standing, and every count of plaintiff's six-count, purported class action complaint suffers from incurable legal insufficiency. By this motion, Mr. O'Neal moves to dismiss the complaint with prejudice.

The complaint alleges that plaintiff bought collectible video-game avatars from Astrals, LLC (which does not mint its own cryptocurrency). All Astrals, including those that plaintiff alleges he bought, are unique, non-fungible tokens ("NFTs") that were neither created nor sold by Mr. O'Neal. They are digital artworks whose authenticity and ownership is recorded on Solana's blockchain, a digital, decentralized ledger that stores information, including information about transactions. Although it is clear (and plaintiff concedes)[1] that each Astral is a unique video-game avatar (whose value can increase through its owner's efforts, and can be resold on

---

[1] Astrals are a limited release of 10,000 unique, video game avatars. *See* Comp. ¶ 10 ("ASTRALS is a collection of 10,000 metaverse-ready 3D avatars by a world-renowned artist, Damien Guimoneau. These beautiful pieces of art are randomly generated by over 150 handcrafted traits and 16 unique races each with their own immersive lore by grand loremasters, Lee Gingold and Shaman8.") (quoting Astrals Whitepaper, available at https://melon-lee.gitbook.io/astrals/who-are-the-astrals/nfts, which therefore is incorporated by the complaint) (referred to as "Whitepaper" throughout).

The Astrals were first offered for sale on March 9 and March 10, 2022. *See id.* ¶ 82. The Whitepaper states that the Astrals Project initially posted a fixed price of 2 Solana for each Astral, all of which exist only on the Solana blockchain. *See* Whitepaper at Initial Funding. Plaintiff alleges that he bought Astrals from the Astrals Project between March 12, 2022 and March 17, 2023, and paid more than 2 Solana for each of them, which strongly suggests that he bought them on the secondary market. Comp. ¶ 83. *See SEC v. Ripple Labs, Inc.*, No. 20-cv-10832-AT-SN (S.D.N.Y July 13, 2023). The *Ripple* court recently held that XRP transactions on exchanges via blind bid/ask transactions were not investment contracts. These purchasers had no way of knowing if they were purchasing from Ripple or from a secondary seller. Therefore, the court held that these public exchange purchasers could not expect profits solely from the efforts of others, because they did not extract promises from Ripple to promote XRP. *See* discussion below in Section II.

1

numerous marketplaces), the complaint insists that Astrals satisfy the definition of an investment contract and should be subject to the registration requirements of securities laws.

Not so. This case is a compelling illustration why, "[i]n our mercantile economy, we should not try to turn every 'thing' which might be purchased and sold into a 'security.'" *Mechigian v. Art Cap. Corp.*, 612 F. Supp. 1421, 1428 (S.D.N.Y. 1985) (rejecting theory that artwork, a lithographic plate, was a security). Astrals were intended for and marketed to gamers, not investors, and the application of well-settled legal principles to the federal securities law counts compels their dismissal. The complaint and all six counts require dismissal for lack of standing and failure to state a claim.

Plaintiff's complaint ("Comp.") [D.E. 1] purports to allege violations of: Sections 5 and 12(a)(1) of the Securities Act of 1933 (Count I); Section 15 of that Act (Count II);[2] Section 517.07 of the Florida Securities and Investor Protection Act ("FSIPA") (Count III); Section 501.201 of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA") (Count IV); Section 13.1-501 of the Virginia Code (Virginia Securities Act ("VSA")) (Count V); and Section 59.1-196 of the Virginia Code (Virginia Consumer Protection Act ("VCPA")) (Count VI). Plaintiff's entire case is based on the false premise that Astrals NFTs ("Astrals") are securities. These digital artworks are not securities, and the securities law claims are fatally infirm.

First, plaintiff has no standing because he lacks privity with Mr. O'Neal, who sold him nothing.[3] Second, Astrals are not notes under federal (or state) securities law, or investment contracts under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). Third, plaintiff failed to adequately allege any of the complaint's six counts, and lacks standing to bring his Florida law claims as a matter of law. Further, plaintiff's allegations are inconsistent with economic reality. Astrals are collectible-video game avatars that were marketed to gamers and intended to be used in games in the metaverse (not only on Astrals' own site). Finally, the complaint misstates and exaggerates Mr. O'Neal's relationship to Astrals, LLC, and his purported involvement in the

---

[2] Sections 5, 12(a)(1), and 15 of the Securities Act are codified at 15 U.S.C. §§ 77e, 77l(a)(1), and 77o, respectively. We cite them here as Sections 5, 12(a)(1), and 15.

[3] The complaint also makes numerous unsupported (and unsupportable) allegations about Mr. O'Neal's purported ownership interest in, and "control" of, Astrals, LLC. Even if those false allegations were true, the Securities Act claims would remain legally insufficient, as demonstrated below.

promotion and sale of Astrals (none of which would make him a seller, even if it were true). This case is a shakedown, a legally insufficient attempt to extort a celebrity who endorsed a digital product. The complaint is irreparably infirm. It should be dismissed with prejudice.

## **ARGUMENT**

### I.   **THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER RULE 12(b)(1)**

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "cases" and "controversies." U.S. Const. art. III, § 2. Thus, where a plaintiff fails to adequately allege standing, federal courts do not have jurisdiction over his or her complaint. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Because standing is "a jurisdictional matter," "[a] motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1)." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Finally, "a plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and it is proper for the court to determine standing on a motion to dismiss. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019) ("It is well-settled that *prior to the certification of a class*, . . . the district court must determine that at least one named class representative has Article III standing to raise *each class subclaim*.") (emphasis added); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1204-05 (S.D. Fla. 2021).

The court lacks subject-matter jurisdiction over all six counts because: (1) plaintiff has failed to plead express privity with Mr. O'Neal in the purchase of Astrals NFTs, warranting dismissal of Counts I and II[4], and all four state law causes of action; (2) plaintiff, a Virginia resident who does not allege that he suffered any harm in Florida, cannot seek relief on behalf of any Florida Subclass, warranting dismissal of Counts III and IV; and (3) the complaint does not allege a concrete injury, actual damages or causation, warranting dismissal of Counts V and VI.

---

[4] As further demonstrated further below, the complaint did not (and could not) adequately allege that Mr. O'Neal is a seller under the §12(a)(1). Mr. O'Neal was not "the person who transfers title to, or other interest in, that property," and he did not "successfully solicit the purchase" that plaintiff alleges he made from Astrals Project. *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988). Mr. O'Neal is not subject to liability under section 12(a)(1) or section 15.

**A.** **Plaintiff Lacks Standing to Pursue the Federal Securities Act Claims, which Divests the Court of Supplemental Jurisdiction Over the State Law Claims**

Section 12 of the Securities Act only can impose civil liability on a person that "offers or sells a security," where the plaintiff "purchas[es] such security *from him*." 15 U.S.C. § 77l(a) (emphasis added) (referred to herein as § 12(a)(1). A plaintiff "only has standing to sue under Section 12 if he purchased securities *from the defendant*." *Licht v. Watson*, 567 F. App'x 689, 691-92 (11th Cir. 2014) (emphasis added); *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013) ("[P]laintiffs must have purchased securities directly from the defendants."). "This is an express privity requirement." *In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1369 (S.D. Fla. 2001) (citing *Joseph v. Wiles*, 223 F.3d 1155, 1161 (10th Cir. 2000) (abrogated on other grounds)).

Plaintiff alleges that he purchased the Astrals NFTs from the Astrals Project. Comp. ¶ 83; *id.* ¶ 105 ("Plaintiff and members of the Nationwide Class suffered damages as a result of their purchase of the unregistered Astrals NFTs securities *through the Magic Eden marketplace*.") (emphasis added); *see id.* ¶¶ 20, 80-82 (allegations regarding the purchase through the Magic Eden marketplace on the Astrals website); *id.* ¶ 86 (class definitions describing purchase from alleged issuer as having "purchased an NFT *from the Astrals Project*") (emphasis added). Having admitted that he did not buy any NFTs from Mr. O'Neal, but claiming to have bought them from the Astrals Project, plaintiff cannot establish express privity with Mr. O'Neal and does not meet the well-settled standing requirements for a claim under Section 12.[5] The Court lacks subject-matter jurisdiction over Count I, warranting its dismissal.[6]

_____

[5] The complaint does not (and could not) allege that Mr. O'Neal personally sold or successfully solicited the sale of any Astrals to plaintiff. Mere conclusory allegations are insufficient, and solicitation requires a plaintiff to have been individually urged or persuaded to buy. *E.g., In re BitConnect Sec. Litig.*, 2019 WL 9104318, *10 (S.D. Fla. 2019) (citing *Pinter*, 486 U.S. at 644 and *Ryder Int'l Corp. v. First Am. Nat. Bank*, 943 F.2d 1521, 1531 (11th Cir. 1991)). Merely "encountering publicly available content" created by a purported promoter is not enough. *BitConnect Sec. Litig.*, 2019 WL 9104318 at *10; *accord Rensel v. Centra Tech, Inc.*, 2018 WL 4410110, at *5 (S.D. Fla. 2018) (dismissing §12(a)(1) claims where alleged solicitation consisted of twitter posts that were not specifically directed at plaintiffs).

[6] As noted above, the recent *Ripple* decision held that blind purchases on a cryptocurrency exchange did not satisfy the *Howey* test for an investment contract, because buyers could not know if they were buying from the issuer of the cryptocurrency or from another buyer on the secondary market, which meant that they could not expect profits solely from the efforts of others. *See supra*, note 1.

Because the Section 15 claim (Count II) against Mr. O'Neal is derivative of Count I's Section 12 claim, "the standing determination as to the Section 12 claim will be dispositive of the standing analysis." *Rensel v. Centra Tech, Inc.*, 2018 WL 4410110, at *5 (S.D. Fla. 2018); *see Greenfield Children's P'ship v. Friendfinder Networks, Inc.*, 2014 WL 12205997, at *6 n.10 (S.D. Fla. 2014) (noting that "Section 15 imposes derivative liability on certain 'control persons' for primary violations of the Securities Act" and dismissing claims under Section 15 because the complaint "fails to state a claim under the predicate Securities provisions"); *Dennis v. Gen. Imaging, Inc*., 918 F.2d 496, 509 (5th Cir. 1990) (None of the defendants could be liable under § 15, "since there [were] no actual violators of the securities laws to be held liable with."); *Ehlert v. Singer*, 245 F.3d 1313, 1320 (11th Cir. 2001) ("Because we hold that Plaintiffs have failed to state a claim of a securities violation under §§ 11 and 12, they have also failed to state a claim under § 15.").[7] Because the Court lacks jurisdiction over Count I's Section 12 claim, Count II also should be dismissed, because plaintiff also lacks standing to assert it.[8]

A district court should dismiss supplemental state-law claims when it no longer has jurisdiction over the federal claims, pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367(c)(3). *See Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). This is especially appropriate where, as here, the federal claims are dismissed early in the case. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well."); *Mancilla v. GR OPCO, LLC*, 2022 WL 3017334 (S.D. Fla. 2022) (trial court refused to exercise supplemental jurisdiction over state-law claims after Federal claim was withdrawn);

---

[7] As further demonstrated below, plaintiff also failed to adequately allege that Mr. O'Neal is a seller under section 12(a)(1). Mr. O'Neal was not "the person who transfers title to, or other interest in, that property," and did not "successfully solicit the purchase" that plaintiff made. *Pinter*, 486 U.S. at 642, 647. Thus, Mr. O'Neal is not subject to liability under section 12(a)(1).

[8] This would be so, even if the complaint's vaporous allegations regarding Mr. O'Neal's purported "control person" status were legally sufficient. The complaint asserts the legal conclusion that O'Neal was a control person "by virtue of his office, stock ownership, agency, agreements or understandings, and specific acts." Comp. ¶ 111. Despite its copious pictures and quotes from Mr. O'Neal, the complaint does not allege that he holds any ownership interest in Astrals, LLC, and its use of a photo of Astrals' "founders" (*id.* at ¶ 17) lists him along with the company's officers, but does not say he holds any office. A person who does not have the duty (as an officer) or the power (through ownership of a controlling interest) to control a company's affairs cannot properly be alleged to be a control person.

*Bell v. Broad Mgmt. Grp., LLC*, 2022 WL 18779106 (S.D. Fla. 2022) (trial court granted motion to dismiss and declined to exercise supplemental jurisdiction over remaining state-law claims after Federal claim was dismissed). Accordingly, because the Court lacks jurisdiction over the two federal Securities Act claims, the state-law claims in Counts III, IV, V, and VI also should be dismissed.

In addition to federal question jurisdiction, the complaint also alleges diversity jurisdiction (28 U.S.C. § 1332(a)) and Class Action Fairness Act ("CAFA") jurisdiction (28 U.S.C. § 1332(d)(1)). *See* Comp. ¶ 3. Because plaintiff lacks Article III standing to pursue his state law claims, these jurisdictional assertions also are legally insufficient as a separate basis for subject matter jurisdiction because plaintiff has no standing.

### B.    Plaintiff Lacks Standing to Pursue Florida Claims for Himself and the Purported Florida Subclass

Even assuming *arguendo* that the complaint's diversity and CAFA jurisdictional allegations were legally sufficient,[9] or that the Court were not to dismiss the state law claims for want of supplemental jurisdiction after dismissing the federal claims,[10] dismissal of the Florida claims still would be required, because plaintiff lacks standing. "Named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Thus, "a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000).

A representative plaintiff is "prohibited from asserting claims under a state law other than

---

[9] Totaling up plaintiff's purported purchases, the complaint alleges that he spent a total of 968.35 Solana to buy Astrals. *See* Comp. ¶ 83. Using the highest US dollar value of Solana reported for each date on which plaintiff claims to have bought Astrals, his total expenditure could not have exceeded $26,837.44 (using data from https://www.coindesk.com/price/solana/). This amount falls far short of satisfying the $75,000 jurisdictional amount for diversity jurisdiction under 28 U.S.C. § 1332(a). Similarly, even if all 10,000 Astrals were sold at the highest reported price for *any day* since they went on sale ($136.88), a nationwide class of all purchasers could not have spent more than $3,000,000 on them, which would fall far short of satisfying CAFA's $5,000,000 aggregate alleged damages requirement. *See* 28 U.S.C. § 1332(d)(2).

[10] *See, e.g.*, *In re Bitconnect Sec. Litig.*, 2019 WL 9104318 at *9-11 (dismissing remaining state law claims against alleged promotors of purported cryptocurrency ponzi scheme after holding that they were not statutory sellers under Section 12 of the Securities Act).

that [from] which the plaintiff's own claim arises." *Feldman v. BRP US, Inc.*, 2018 WL 8300534, at *6 (S.D. Fla. 2018); *accord In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 1266609, at *4 (S.D. Fla. 2016) ("A named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise."); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 267-68 (S.D. Fla. 2003) (The named plaintiffs, Florida residents, lacked "standing to raise questions of state law for states other than Florida," and the court lacked "jurisdiction to evaluate the law of those other states."); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) (dismissing for lack of standing "all state statutory claims where no named plaintiff resides in the state from which the claim is asserted"); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) ("[T]he named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief. Class allegations that others suffered injuries giving rise to claims add . . . nothing to the question of standing.") (ellipsis in original).

Plaintiff is a Virginia resident and citizen. Comp. ¶ 1. The complaint fails to allege that he bought Astrals in Florida, was harmed in Florida, or suffered any damages in Florida.[11] Having no connection to Florida, plaintiff lacks standing to bring Florida-law claims under FSIPA (Count III) and FDUTPA (Count IV) on his own behalf or on behalf of a purported class. *See* Fla. Stat. § 517.07(1) (FSIPA pertains solely to the offer or sale of an unregistered security *within the state*); Fla. Stat. § 501.202(3) (the purpose of FDUTPA is to make *state* consumer protection and enforcement consistent with federal consumer protection laws).

Accordingly, "[w]here . . . a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009). Therefore, the Court should dismiss Count III and Count IV for lack of subject-matter jurisdiction.

### C. Plaintiff Lacks Standing to Pursue the VCPA Claim

As with the Florida law claims, the Virginia law claims should be dismissed as supplemental claims after dismissal of the federal anchor claims. In addition, even assuming *arguendo* that the complaint's diversity jurisdiction allegations were legally sufficient, plaintiff

---

[11] The complaint fails to allege that plaintiff suffered any damages anywhere. It alleges that he bought and holds Astrals. There can be no diversity or CAFA jurisdiction over his Florida law claims because he lacks standing as a non-Floridian, and has not alleged actual damages.

still would lack standing for the VCPA claim, because he hasn't adequately alleged an injury in fact and damages. To establish an injury in fact, a plaintiff must show that he "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). For an injury to be "concrete," it must be "real, and not abstract," such as actual "physical," "monetary," and "reputational harms." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To qualify as "particularized," an injury "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. "Article III standing requires *a concrete injury* even in the context of a statutory violation," and a complaint does not "automatically    evelop[y] the injury-in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 341. "[A] concrete injury" is required "even in the context of a statutory violation." *Id*.

The complaint alleges that the plaintiff purchased unregistered securities from the Astrals Project in the form of the Astrals. Comp. ¶ 83. It does not plead facts showing any particularized injury, such as a decrease in value of specific Astrals *before he sold them*. The general reference to a "steep drop in Astrals floor price" (Comp. ¶ 34) does not quantify plaintiff's injury, and that allegation is insufficient to confer standing. *Spokeo*, 578 U.S. at 340. Thus, complaint falls short of meeting the most basic tenet of pleading an injury-in-fact—"it must actually exist." *Id.* The conclusory damages allegations are not concrete or particularized; standing requires more. *See, e.g.*, *Goode v. City of Philadelphia*, 539 F.3d 311, 324-25 (3d Cir. 2008) (finding a "nonspecific statement" is "insufficient" for standing).

Further, to plead standing the complaint must allege an injury that is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020). The complaint's allegations that Astrals' value "is linked almost entirely to Mr. O'Neal's celebrity status and the success of his promotional efforts" (Comp. ¶ 36) are insufficient to demonstrate standing without legally sufficient allegations that Mr. O'Neal personally induced plaintiff to purchase Astrals, which the complaint lacks.

Finally, even assuming *arguendo* that the complaint adequately alleged diversity jurisdiction, and that no injury in fact and actual damages are required for a VSA rescission claim, it is almost certain that CAFA's $5 million jurisdictional amount never could be met by

the aggregated claims of a putative VSA subclass. *See supra*, note 9. Even if it could, and an independent basis for diversity jurisdiction over Count V's VSA rescission claim could exist, Mr. O'Neal was not a seller under the VSA and this claim (like the federal registration claim of Count I) would require dismissal under Rule 12(b)(6),

Plaintiff plainly lacks standing to pursue the Florida claims in Counts III (FSIPA) and IV (FDUTPA), or the VSPA claim in Count VI. Even if diversity jurisdiction and standing could exist as to Count V's VSA claim, it still would require dismissal for failure to state a claim, because Mr. O'Neal sold nothing to plaintiff. Thus, even if the federal claims or plaintiff's diversity jurisdiction allegations were legally sufficient, the supplemental state law claims in Counts III (FSIPA), IV (FDUTPA) and VI (VSPA) would require dismissal for lack of jurisdiction based on no standing.

## II.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE ASTRALS ARE NOT SECURITIES SUBJECT TO FEDERAL (OR STATE) SECURITIES LAWS

Even if subject matter jurisdiction existed (it doesn't), and even if the state-law counts didn't have to be dismissed as a result (under 28 U.S.C. § 1367(c)(3)), the complaint would warrant dismissal with prejudice under Rule 12(b)(6) for failure to state a claim. Plaintiff's entire case depends on the assertion that Astrals are notes or investment contracts under Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1) and consequently subject to federal and state securities laws. Comp. ¶¶ 68-76. Plaintiff's frivolous, drive-by assertion that Astrals also somehow constitute a note contradicts well-settled law (as well as logic). Comp. ¶ 101. "In the Securities Act the term 'security' was defined to include by name or description many documents in which there is common trading for speculation or investment. Some, such as notes, bonds, and stocks, are pretty much standardized and the name alone carries well settled meaning." *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 351 (1943). A note is "[a] written promise by one party (the maker) to pay money to another party (the *payee*) or to bearer." *Hyden v. CH3 Sols., LLC*, 2021 WL 6332793, at *8 (E.D. Tenn. 2021) (citing Black's Law Dictionary (11th ed. 2019)). Plaintiff does not plead any written promise, let alone a written promise to pay money to another party or bearer. This was nothing more than the purchase of collectible, video-game avatars. *See* Comp. ¶ 10. It bears no resemblance to the statutory definition of a note.

Plaintiff's investment-contract theory relies on SEC actions against cryptocurrency companies asserting that their initial token distributions involved investment contracts and

constituted unregistered offerings of securities. Comp. ¶¶ 68, 70, 74. Plaintiff cites the *Kik*, *Telegram,* and *BlockFi* cases,[12] which are not on point. *Cf.* Comp. ¶¶ 68, 70, 74. The objects of these transactions (the tokens) were not held to be securities, but the sales were held to be investment contracts.[13] Plaintiff's cases involved cryptocurrency tokens that did not exist, capital fundraising, and promised uses of capital investments to develop other products from which buyers would directly profit. *See Telegram*, 448 F. Supp. 3d at 375 ("As Telegram has noted, Grams do not exist and did not exist at the time of the 2018 Sales . . . . But the Initial Purchasers provided capital to fund the Blockchain's development in exchange for the future delivery of Grams, which they expect to resell for a profit."); *Kik*, 492 F. Supp. 3d at 175  ("The Private Placement Memorandum further explained to Pre-Sale participants that money they paid would be used to create a 'Minimum Viable Product,' advance the   evelopent of a 'Kin Ecosystem,' and build an application to make the Kin Ecosystem available via Kik Messenger."). The *BlockFi* case was resolved by a settlement in which the defendant neither admitted nor denied the SEC's assertions.[14] The facts in these cases are dispositively dissimilar from this case. More importantly, the *Telegram, Kik,* and *BlockFi* courts did not hold that digital artwork or digital NFTs are securities under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), and its progeny. The complaint notes "that 10,000 Astrals will be in supply, with presale to begin March 9, 2022, and public sale March 10, 2022." Comp. ¶ 82. This case does not involve a capital investment drive, an appeal to passive investors, or investors at all. Instead, it arises from the sale to gamers of collectible video-game avatars that were "metaverse-ready" upon sale. *Id.* ¶ 10. Further, none of plaintiff's purchases took place on either March 9th or 10th, and none were bought for the original price of 2 Solana,[15] which strongly suggests that plaintiff bought them on the secondary market, not from Astrals. *Cf.* Comp. ¶ 83.

---

[12] For ease of reference, the citations to these cases are *SEC v. Kik Interactive Inc.*,492 F. Supp. 3d 169 (S.D.N.Y. 2020) and *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020). The *BlockFi* settlement is cited in note 14, *infra*.

[13] This is nothing new. For example, in *SEC v. ETS Payphones, Inc.*, the Eleventh Circuit found that agreements for the sale and leaseback of payphones were investment contracts, but not the payphones themselves. 408 F.3d 727 (11th Cir. 2005).

[14] *BlockFi Agrees to Pay $100 Million in Penalties and Pursue Registration of its Crypto Lending Product*, SEC (Feb. 14, 2022), https://www.sec.gov/news/press-release/2022-26.

[15] Whitepaper at "Initial Funding" tab.

Plaintiff also relies on the SEC Framework for "Investment Contract Analysis of Digital Assets" ("SEC Framework").[16] Comp. ¶ 63. The SEC framework itself notes that it has no precedential value or weight, because it is not "a rule, regulation, or statement of the Commission," and does not "supersede existing case law." SEC Framework at n.4. District courts have agreed that the SEC Framework is "merely a non-binding agency interpretation of the longstanding *Howey* test and did not create new rights." *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 339 (S.D.N.Y. 2021). Ultimately, it is the *Howey* test that determines whether the purchase of something constitutes an investment contract.

As another district court noted, "NFTs are a relatively new technology" and there is little case law on the question whether a sale of NFTs constitutes an investment contract. *Notorious B.I.G. LLC v. Yes. Snowboards*, 2022 WL 2784808, at *5 n.3 (C.D. Cal. 2022). Moreover, all *Howey*-test cases are uniquely dependent upon their facts. *Marine Bank v. Weaver*, 455 U.S. 551, 560 n.11 (1982) (holding "[e]ach transaction must be analyzed and evaluated on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole"). We are aware of but one recent decision involving the sale of digital NFTs in which a district court applied the *Howey* test. *Friel v. Dapper Labs, Inc.*, 2023 WL 2162747 (S.D.N.Y. 2023). That decision held that the plaintiff's allegations were "facially plausible and survive[d] Defendants' Motion to Dismiss," noting that it was a "close call" and a "narrow" decision. *Id.* at *8.

In sharp contrast, this case is not a "close call," and dispositive factual differences will compel the opposite result if the court were to reach this issue—despite plaintiff's lack of standing and the court's lack of jurisdiction—because Astrals are fundamentally different from the "NBA Top Shot NFTs" at issue in *Dapper Labs*.

That case involved NFTs which resembled digital baseball cards and were marketed to collectors, who traditionally invest in and passively hold such cards with an expectation of profit solely through the efforts of others (the sellers, and the athletes depicted on the cards). *See id.* at *5. They could not be used for anything, *see id.*, unlike Astrals, which were marketed to gamers

---

[16] *Securities and Exchange Commission, Framework for Investment Contract Analysis of Digital Assets*, SEC, https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets (last modified Mar. 8, 2023).

and intended to be actively used by gamers as their avatars when they play games in the metaverse. *See* Comp. ¶¶ 10, 19, 20, 31; *see also* Whitepaper at "Play-to-Earn Mini Game" and "Triple A Game" tabs. Further, the NBA Top Shots were not original artworks, but digital reprints of NBA highlights pursuant to highly restrictive licenses between Dapper Labs and the NBA. *Id.* at *4-5. Unlike each Astral, which was unique, original art, NBA Top Shots could not be merchandised or used in video games, which effectively prohibited any efforts by a buyer to make them more valuable, *Dapper Labs,* 2023 WL 2162747, at *5 (both of which Astrals encourages buyers to do, such as making and selling t-shirts depicting a buyer's Astral). *See* Comp. ¶¶ 10, 20; Whitepaper at "Terms and Conditions," "NFTs," and "Introduction" tabs. NBA Top Shots also had to be bought and sold on Dapper Labs' own marketplace, using its own cryptocurrency (FLOW), which was a means to prop up that cryptocurrency's value. *Dapper Labs,* 2023 WL 2162747, at *5. In sharp contrast, Astrals, LLC does not have its own cryptocurrency, Astrals are bought and sold using the Solana cryptocurrency (SOL), and they may be bought and sold on numerous marketplaces, not only Astrals' marketplace, Magic Eden. *See* Comp. ¶ 83; *see generally*, Whitepaper.

Assessing a purely passive investment in an NFT that could only be admired but not used, which had to be bought and sold on the seller's marketplace using the seller's cryptocurrency, the *Dapper Labs* court found "that but for Dapper Labs's creation, development, and maintenance of the *private* Flow Blockchain, Moments would have no value." 2023 WL 2162747, at *9 (emphasis in original). That is plainly not true of Astrals. As noted above, and as plaintiff concedes, Astrals are recorded on Solana's *public* blockchain and bought and sold using Solana's cryptocurrency (SOL), neither of which are maintained, let alone owned by, Astrals, LLC. Comp. ¶¶ 17, 83. Moreover, Solana's public blockchain lists numerous NFTs besides Astrals, including many offered for sale on other marketplaces, none of which are owned or maintained by Astrals, LLC. The *Dapper Labs* court found that the privatized ledger made "the purchasers reliant upon the promoter for the asset's value," noting that, "as more value is created on top of the Flow [B]lockchain, more demand is generated for FLOW tokens." *Dapper Labs*, 2023 WL 2162747, at *9. Here, no Astrals purchased is reliant upon Astrals, LLC for anything. Astrals, LLC doesn't have its own blockchain or cryptocurrency. *See generally* Whitepaper. The Solana public blockchain is not managed by Astrals, LLC, and is a public network that anyone can access and use. *Id.* As the Astrals Whitepaper (Comp. ¶ 10) explains, purchasers can increase

the value of Astrals by their own efforts, including "levelling up" their Astrals' mutable characteristics or printing their Astrals on t-shirts for sale. None of those efforts have anything to do with Astrals, LLC or anything it does.

### A.  The Complaint's Allegations Fail the *Howey* Test

Plaintiff alleges that Astrals are securities on the theory that they are "investment contracts" under Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).  In *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298 (1946) the Supreme Court provided the applicable standard. An investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party[.]" *Id.* The Eleventh Circuit has restated these elements as "(1) an investment of money, (2) a common enterprise, (3) the expectation of profits, and (4) the expectation of profits to be derived solely from the efforts of others."[17] *ETS Payphones, Inc.*, 408 F.3d at 731-732 (citing *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1198 (11th Cir. 1999)). A plaintiff seeking to allege a transaction is an "investment contract" must plead each element "to a very substantial degree." *Teamsters v. Daniel*, 439 U.S. 551, 560 (1979) (affirming dismissal of complaint). Here, plaintiff's allegations do not satisfy the *Howey* elements.

### B.  Plaintiff Failed to Plead an Investment of Money

The first element of the *Howey* Test requires an *investment* of money. The Supreme Court has held that "in searching for the meaning and scope of the word 'security' in the Act, form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967). Here, plaintiff merely alleges that "[i]nvestors purchasing Astrals NFTs made an investment of money or other valuable consideration for the purposes of the *Howey* Test." Comp. ¶ 78(a). This is obviously (and impermissibly) conclusory and assumes that Astrals purchasers are investors, which mischaracterizes the economic reality

---

[17] Importantly, the Eleventh Circuit has noted that "*Howey* recognized that the Securities Acts, which were passed to correct serious abuses in the then largely unregulated securities markets, were intended to reach the 'countless and variable schemes devised by those who seek the use of the money of others *on the promise of profits*.'" *Phillips v. Kaplus*, 764 F.2d 807, 815 (11th Cir. 1985) (quoting *Howey*, 328 U.S. at 299 (emphasis added). However, there is *no reference to any promise of potential profits* in the complaint, because no such promises were made by Mr. O'Neal. The complaint attempts to misuse *Howey* to turn video game avatars, sold as products to be used, into securities, which defeats the Supreme Court's intention.

of the sale and purchase of Astrals. *See id.* Further, whatever this plaintiff thought he was buying is irrelevant, because the *Howey* test is an objective standard. *E.g.*, *Warfield v. Alaniz*, 569 F.3d 1025, 1021 (9th Cir. 2009). It is plain that Astrals were marketed to gamers. *See* Comp. ¶¶ 10, 19, 20, 31; *see also* Whitepaper at "Play-to-Earn Mini Game" and "Triple A Game" tabs.

This is made plain by the Astrals' Whitepaper, from which the complaint takes this edited quote: "ASTRALS is a collection of 10,000 meta-verse ready 3D avatars . . . with their own immersive lore by grand loremasters [and] a-story driven, play-to-earn role-playing game." Comp. ¶ 10. This describes the uniqueness of each Astral and uses to which it can be put, but there is more that the complaint leaves out. The Whitepaper expressly cautioned that purchasing an Astral is not making an investment: "[Astrals] are not meant as investment vehicles. We make absolutely no promise or guarantee that these NFTs will be worth anything more than what the market deem[sic] the art to be worth. This could very well be zero."[18]

The Supreme Court has held "when a purchaser is motivated by a desire to use or consume the item purchased . . . the federal securities laws do not apply." *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852-53 (1975). Astrals were designed, intended, and marketed to gamers to be used by gamers in the metaverse and various video games. *See* Comp. ¶¶ 10, 19, 20, 31; *see also* Whitepaper at "Play-to-Earn Mini Game" and "Triple A Game" tabs. Developing a fictional history (lore) and hiring a world-renowned artist furthered the marketing of Astrals for use and consumption as a product. Comp. ¶ 10. The objective purchaser was intended to be motivated to use Astrals as video-game avatars, not to sit on his hands hoping they would increase in value through someone else's efforts. *See* Comp. ¶¶ 10, 19, 20, 31; *see also* Whitepaper at "Play-to-Earn Mini Game" and "Triple A Game" tabs. And even if that were some purchaser's motivation, this would have no effect on the economic reality of Astrals, which were intended to be used and consumed. *See* Comp. ¶¶ 10, 19, 20, 31; *see also* Whitepaper at "Play-to-Earn Mini Game" and "Triple A Game" tabs. Astrals simply cannot be objectively determined

---

[18] The complaint partially links to the Astrals Whitepaper, which explains the nature of Astrals. *See* Comp. ¶ 10 (containing link to Whitepaper). Mr. O'Neal incorporates the Whitepaper by reference as essential to plaintiff's claims. *E.g.*, *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999)).

to have been marketed for *passive* investment.[19]

In a typical case, the payment of consideration may be deemed an "investment of money" under *Howey*.[20] But this is not a typical case, and the Eleventh Circuit has declined to hold a transaction is an investment merely because consideration for the transaction existed. *Phillips v. Kaplus*, 764 F.2d 807, 816-17 (11th Cir. 1985) (Lawyer's 5% interest in sale of real property was in exchange for services rendered, and was not a security even though the transaction made him a passive investor in properties managed by others). The complaint pleaded no facts showing that Astrals, LLC intended for Astrals to be bought by people seeking to make profits through the efforts of others. In fact, the Whitepaper expressly contradicts that notion. *See generally* Comp. ¶¶ 10, 20; Whitepaper at "Terms and Conditions," "NFTs," and "Introduction" tabs. The complaint failed to plead facts sufficient to show an investment of money.

**C.    Plaintiff Failed to Plead Sufficient Facts Showing a Common Enterprise**

The second element of the *Howey* test is a "common enterprise." *Howey*, 328 U.S. at 299. Plaintiff has insufficiently alleged a common enterprise. The Circuits have applied differing tests to this question. *See, e.g.*, *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87-88 (2d Cir. 1994) (noting split). The Eleventh Circuit uses what is referred to as the "broad vertical commonality" test. "A common enterprise exists where the "fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) (quoting *Villeneuve v. Advanced Bus. Concepts Corp.*, 698 F.2d 1121, 1124 (11th Cir. 1983)). Broad vertical commonality requires that the fortunes of passive investors depend on the efforts of the seller. *See Long v. Shultz Cattle Co., Inc.*, 881 F.2d 129, 140-41 (5th Cir. 1989).

The complaint misstates economic reality in alleging that "[i]nvestors who buy Astrals NFTs are passive participants in the enterprise, with the profits of each investor intertwined with the fate of the Astrals Project. The fortunes of the Astrals NFT investors, and the value of the Astrals NFTs, were linked almost entirely to O'Neal's celebrity status and the success of his promotional efforts." Comp. ¶ 78(b). This allegation is plainly false. The value of plaintiff's

---

[19] This conclusion is not undermined by the mere existence of a "Head of Investor Relations" at Astrals, LLC. *Cf.* Comp. ¶ 18.

[20] The complaint concedes that some Astrals were given away, which means no consideration was paid. Comp. ¶ 22.

digital avatars is not *solely dependent* upon what Astrals, LLC, might do, let alone what O'Neal might do. They can increase in value through plaintiff's own efforts, and Astrals, LLC would not share in any profits plaintiff might realize upon selling them. *See Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 147 (7th Cir. 1984) (Applying the broad vertical commonality test, there was no common enterprise where plaintiff did not share in any profit made on the appreciation of a painting before he bought it, and defendant did not share in any appreciation in value after plaintiff bought it.).

Moreover, the Whitepaper details numerous ways purchasers can increase their Astrals' value on the secondary market, stating that "Astrals will also have several mutable (i.e. changeable) attributes such as 'level' and 'class', which allow them to grow and evolve as they progress through our staking PvE game. These attributes are carried over even if they are sold on the secondary market." Whitepaper at "Purpose of this Paper;" *see id*. at "NFTs" tab. Purchasers also can equip their Astrals with various add-ons and are encouraged to merchandize Astrals for their own account. *Id*.

Purchasers of Astrals are clearly intended to be "active gamers" and not "passive investors," and the complaint's bare assertion that Astrals' value is linked "almost entirely to O'Neal's celebrity status or his promotional efforts," is not only false but ludicrous. *Cf.* Comp. ¶ 78(b). If effort is required on the part of purchasers to produce a profit, the purchase does not meet the common enterprise test. *In re BitConnect Sec. Litig.*, 2019 WL 9104318, at \*7 (S.D. Fla. 2019) (citing *Eberhardt*, 901 F.2d at 1580-81 ("The thrust of the common enterprise test is that the investors have no desire to perform the chores necessary for a return.")). Astrals collectibles intended to be actively used in video games and improved through a purchaser's own efforts. The common enterprise element is lacking.

### D.   Plaintiff Failed to Plead Facts Sufficient to Show a Reasonable Expectation of Profits

The third element of the *Howey* Test requires that the investment (not present) in a common enterprise (not present) was made with a reasonable (objective) expectation of profit. The complaint merely asserts that "investors in Astrals NFTs are clearly expecting profit through the appreciation of their digital assets, including through O'Neal's promotion efforts, that could be sold and traded through the 'Magic Eden' marketplace." Comp. ¶ 78. This sentence alleges nothing.

The question whether a purchaser had a "reasonable expectation of profits," is "an

*objective* inquiry into the character of the instrument or transaction offered based on what the purchasers were 'led to expect.'" *Warfield*, 569 F.3d at 1021 (quoting *Howey*, 328 U.S. at 298-99) (emphasis added). "The subjective intentions or motivations of the investors are irrelevant." *SEC v. Aqua-Sonic Prods. Corp.*, 524 F. Supp. 866, 876 (S.D.N.Y. 1981), *aff'd*, 687 F.2d 577 (2d Cir. 1982). The mere fact that someone wanted to invest, or profit, is not sufficient to turn a purchase of something into an investment contract. *Woodward v. Terracor*, 574 F.2d 1023, 1024-25 (10th Cir. 1978) (no investment contract found where purchasers stated that they "did not intend to actually build on the land, and that they bought the land as an 'investment'").

The analysis instead looks to what plaintiff "[was] led to expect" by the Astrals Project, the actual seller. *See Warfield*, 569 F.3d at 1021 ("[W]hile the subjective intent of the purchasers may have some bearing on the issue of whether they entered into investment contracts, we must focus our inquiry on what the purchasers were offered or promised."). Even assuming *arguendo* that Mr. O'Neal's public use of his own Astral avatar could be imputed to the actual seller, Astrals, LLC (despite no facts to support it), not one of these alleged "promotions" in the complaint refers to Astrals *as an investment or promotes an expectation of profit*. *See* Comp. ¶¶ 21-22, 24, 26-29, 31-32. In fact, only one alleged promotion, an undated video of Mr. O'Neal, makes even passing reference to the floor value of Astrals.[21] This is legally insufficient. *See, e.g.*, *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 791 (11th Cir. 1991) (rejecting securities claim, stating that "[o]f the several marketing items introduced into evidence, there was only one passing reference to buying the property as an investment").

In *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832-AT-SN (S.D.N.Y July 13, 2023), the court recently held that XRP cryptocurrency purchases through blind bid/ask exchange transactions were not investment contracts. These purchasers could not know if they were buying from Ripple or a secondary seller. The court held that these public exchange purchasers could not expect profits solely from the efforts of others, because they did not extract any promises from

---

[21] The complaint cites a tweet by a random user, BuffBabyG, aka Benito Reyes, to display an undated video clip of Mr. O'Neal supposedly stating, "we're not stopping until a 30 Sol Floor." *See* Comp. ¶ 27. This inadmissible clip is offered with no context, could be from any source, has no connection to Astral, and does not constitute a promotion. Further, plaintiff alleges that in this tweet, Mr. O'Neal urges (someone) to "hop on the wave before it's too late." *Id.* However, that statement was written by BuffBabyG, not Mr. O'Neal, let alone Astrals, LLC, the actual seller. *Id.*

Ripple to promote XRP. No. 20-cv-10832-AT-SN (S.D.N.Y July 13, 2023). In this case, plaintiff claims he purchased his Astrals on the Magic Eden marketplace, to which he leaves a link. Comp. ¶ 10. Sellers on the Magic Eden marketplace have anonymous wallet addresses. This means that when an Astral is purchased on Magic Eden, the purchaser does not know who the seller was, which is analogous to the blind exchange transactions addressed in *Ripple*. Plaintiff could not have "extracted a promise" of profits from another's efforts from Astrals, LLC (or Mr. O'Neal) if he did not know who he was buying from. Further, plaintiff purchased Astrals at varying prices, which suggests secondary market purchases, not purchases from Astrals, LLC at the original, fixed price of 2 Solana. *See supra*, note 9. Like the exchange purchasers in *Ripple,* plaintiff was not led to expect profits solely from the efforts of others.

Further plaintiff fails to plead facts showing Mr. O'Neal's promotional efforts affect the value of Astrals. Plaintiff does not cite one fact or statistic that shows a correlation between Mr. O'Neal's promotion and the value of the Astrals. Mr. O'Neal is unaware of any case where simply promoting a product at a time that it was popular could create a reasonable expectation of profits or convert the sale of goods into the sale of securities. Plaintiff's allegations fail.

### E.    Plaintiff Failed to Plead the Essential Efforts of Others

The fourth element of the *Howey* Test requires the essential efforts of others, an element that is plainly lacking here. For the efforts of a seller to render a purchase an investment contract, the others' efforts must be "undeniably significant . . . essential managerial efforts which affect the failure or success of the enterprise." *Glenn W. Turner Enter., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973). It is well-settled that "[a]n investor who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in group ventures, is not dependent upon the managerial skills of others." *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982).

Nonetheless, plaintiff alleges that "[p]urchasers of Astrals NFTs are entirely reliant on the managerial efforts of the issuers for their potential profits. Indeed, the success of the Astrals Project's ability to maintain the Astrals NFTs value depended significantly on O'Neal's celebrity status and promotional activities." Comp. ¶ 78(d). Like most of the complaint's breathless hyperbole, this statement is legally insufficient to allege anything,

Moreover, the Whitepaper (on which plaintiff relies) expressly undermines this assertion. This plaintiff (like every Astrals purchaser) has the ability to increase the value of his Astrals through his own efforts. In fact, as demonstrated above, purchasers have multiple ways to

increase the value of their Astrals, including levelling up, improving mutable characteristics, and purchasing add-ons. *See* Whitepaper at "NFTs" tab.

## III.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE LEGALLY SUFFICIENT CLAIMS

Even if subject matter jurisdiction existed (it doesn't), even if the state-law counts didn't have to be dismissed as a result (they do), and even if the complaint's allegations satisfied the *Howey* test (they don't), the complaint still would warrant dismissal with prejudice under Rule 12(b)(6) for failure to state a claim. Such dismissal is required unless a complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While a court must accept a complaint's well-pleaded facts on a motion to dismiss, it need not accept "conclusory allegations," *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002), or "legal conclusion[s] couched as . . . factual allegation[s]." *Twombly*, 550 U.S. at 555. Even assuming *arguendo* that plaintiff's theories regarding Astrals were true, all six counts of the complaint would still remain legally insufficient and warrant dismissal, as we next demonstrate.

### A.   Plaintiff Failed to Adequately Allege a Section 12 Violation Because Mr. O'Neal is Not a Seller and the Complaint Asserts Time-Barred Claims

Even assuming *arguendo* that plaintiff's theories were correct, the complaint still would fail to adequately allege a *prima facie* claim under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a). To do so, a plaintiff must allege: (1) the sale or offer to sell securities; (2) the absence of a registration statement covering the securities; and (3) the use of the mails or facilities of interstate commerce in connection with the sale or offer. *Raiford v. Buslease, Inc.*, 825 F.2d 351, 354 (11th Cir. 1987) (citing *Swenson v. Engelstad*, 626 F.2d 421, 424-25 (5th Cir. 1980)). Section 13 of the Securities Act also requires a plaintiff to assert a Section 12(a)(1) claim "within one year after the violation upon which it is based." 15 U.S.C.S. § 77m. Count I of the complaint fails to state a claim because Mr. O'Neal is not a "seller" subject to liability under Section 12 and plaintiff's claims are time-barred, which warrants dismissal.

### 1. Mr. O'Neal is Not a "Seller" Under Section 12(a)(1) and Therefore Could Not Have Violated Section 5

There are two circumstances in which one can be considered to have "sold" unregistered securities. These are (1) when he is "the person who transfers title to, or other interest in, that property," *Pinter v. Dahl*, 486 U.S. 622, 642-43 (1988); or (2) when he "successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner," *id.* at 647. Plaintiff did not (and could not) allege that Mr. O'Neal transferred title to Astrals, or that he solicited plaintiff's purchases at all. Mr. O'Neal is not a "seller" subject to liability under Section 12(a)(1), Count I should be dismissed.

Plaintiff repeatedly concedes that Astrals were sold on the Magic Eden marketplace, where he made his own purchases. Comp. ¶¶ 20, 81, 83; *see id.* ¶¶ 86, 105 (alleging that putative classes purchased Astrals NFTs from Astrals Project). Nowhere does plaintiff allege that Mr. O'Neal "passed title [to Astrals] to the buyer for value." *See Pinter*, 486 U.S. at 642. As for the second category of "seller," the complaint fails to allege Mr. O'Neal "successfully solicited" the plaintiff to purchase Astrals, let alone did so to further his or Astrals' financial interests. In fact, there are no allegations that Mr. O'Neal solicited anyone's purchase of Astrals. In a similar case, another court of this district dismissed Section 12(a)(1) claims against alleged celebrity promotors, because the plaintiff failed to adequately allege a successful solicitation based on the celebrities' tweets. *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *4-6 (S.D. Fla. 2019).[22]

The complaint alleges that Mr. O'Neal promoted Astrals through tweets, discord posts, and at events where he performed as a DJ. The complaint alleges only four posts by Mr. O'Neal,

---

[22] In *Wildes v. BitConnect Int'l PLC*, "an online promotions team posted thousands of videos" expressly intended to induce the purchase of cryptocurrency investments, promising potential investors "that passive income was merely 'a click away,'" purporting to show them "how to make huge profits'" by investing in a cryptocurrency ponzi scheme. 25 F.4th 1341, 1343-45 (11th Cir. 2022). Nothing like that was (or could be) alleged here. After the district court dismissed, new plaintiffs alleged in an amended complaint that they had signed up "directly through the promoters 'referral links." *Id.* at 1345. The amended complaint was sustained on appeal by an order holding that mass solicitations need not be personal or aimed at a particular person, so long as a purchaser bought the securities "as a result" of the mass online communications. This is consistent with *Rensel*'s requirement that "a plaintiff must allege not only that the defendant actively solicited investors, but that the plaintiff purchased securities as a result of that solicitation. Mere conclusory allegations that a defendant solicited the sale of stock and was motivated by financial gain to do so are insufficient to state a claim under Section 12." *See Rensel*, 2019 WL 2085839, at *3.

and two by others. None of them could reasonably be construed as a solicitation to purchase an Astral NFT, let alone a solicitation relied upon by this plaintiff. *See* Comp. ¶ 22 (post regarding Astrals giveaway); *id.* ¶ 28 (post depicting Mr. O'Neal's own Astral NFT); *id.* ¶ 31 (post providing link to Discord chat related to Astrals); *id.* ¶ 32 (Mr. O'Neal's post solely containing a movie meme on a Discord chat); *see also id.* ¶ 26 (third-party post of picture depicting Mr. O'Neal DJ'ing in front of his own Astral NFT image); *id.* ¶ 27 (third-party post of Mr. O'Neal in a video that does not mention Astrals).

Plaintiff does not allege that Mr. O'Neal had any contact with him or that he even saw any of the alleged social media posts that purport to have been made to persuade him to buy Astrals. *Cf. Pinter*, 486 U.S. at 647, 651 (requiring a relationship between a "solicitor" and purchaser); *In re CNL Hotels & Resorts*, 2005 WL 2291729, at *5 (M.D. Fla. 2005) (A complaint's soliciting assertions "must be supported by specific factual allegations demonstrating a direct relationship between the defendant and the plaintiff-purchaser.").

Additionally, "[a] non-owner cannot be a seller, however, unless he urges a prospective purchaser to buy." *Smith v. Am. Nat. Bank & Tr. Co.*, 982 F.2d 936, 941 (6th Cir. 1992) (citing *Pinter*, 486 U.S. at 644-45); *see Ryder Int'l Corp. v. First Am. Nat. Bank*, 943 F.2d 1521, 1531 (11th Cir. 1991). Not a single purported solicitation in the complaint urged plaintiff (or anyone else) to purchase Astrals.

Further, before plaintiff began purchasing Astrals on March 12, 2022, the complaint alleges only two alleged "promotions" by Mr. O'Neal. Comp. ¶¶ 28, 31. The first was on January 21, 2022, and was a tweet of Mr. O'Neal's own personal Astral with the caption "Power for All. Taken from none." *Id*. ¶ 28. The second was a March 8, 2022 tweet with a link to a Discord chat that tagged the Astrals twitter account. *Id.* ¶ 31. Plaintiff correctly describes Discord as "a voice, video, and text chat app used by millions of people to easily communicate *while playing computer games* together . . . ." *Id.* (emphasis added). Neither tweet was a solicitation or invitation to purchase Astrals, let alone a solicitation or invitation to plaintiff. Because plaintiff has not plausibly alleged that Mr. O'Neal "sold" him Astrals NFTs, Count I fails to state a claim and should be dismissed.

### 2.   *Certain of Plaintiff's Section 12(a)(1) Claims are Time-Barred*

In this district, "dismissal is appropriate if, on the face of the complaint, it is apparent that the claim is time-barred." *Trilogy Props., LLC v. SB Hotel Assocs. LLC*, 2010 WL 7411912, at

*11 (S.D. Fla. 2010). Plaintiff alleges that "[d]efendant sold and offered to sell the unregistered Astrals NFTs to Plaintiff and Nationwide Class members, in violation of 15 U.S.C. §§ 77e(a)." Comp. ¶ 104. "[T]he 'countdown' on the statute of limitations for a claim under section 12(a)(1) begins on the date of the section 5 violation." *Fedance v. Harris*, 1 F.4th 1278, 1286 (11th Cir. 2021). Astrals were first offered for sale on March 9, 2022. Comp. ¶¶ 17, 81, 82. Plaintiff alleges that he bought numerous Astrals between March 12, 2022, and March 17, 2023. *Id*. ¶ 83. Plaintiff filed his Complaint on May 23, 2023. D.E. 1. Multiple purchases on which plaintiff bases his § 12(a)(1) claim occurred more than one year before he filed his complaint. Those claims are time-barred because they were brought more than one year after the purchases,[23] and Count I should be dismissed for failing to allege which purchases were timely.

### B.  Even if Plaintiff had Adequately Alleged a Section 12(a)(1) Claim in Count I, Count II Still Would Require Dismissal Because the Control Person Allegations Under Section 15 are Legally Insufficient

The complaint makes a bare allegation that Mr. O'Neal is a control person of Astrals, LLC, under Section 15 of the Securities Act, 15 U.S.C. §77o.[24] Comp. ¶¶ 2, 111. To state a claim for control person liability, a plaintiff must plead facts showing (1) a primary violation of federal securities laws," and "(2) that the defendant *exercised actual power or control* over the primary violator." *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1276 (11th Cir. 2016) (emphasis added). Even if the complaint had adequately alleged a primary violation (it didn't), its allegations regarding Mr. O'Neal's purported "control" over Astrals, LLC would remain legally insufficient.

First, as demonstrated above, the complaint failed to state a primary claim under section 12(a)(1) and therefore also failed to state a claim under section 15. *See, e.g.*, *Ehlert v. Singer*, 245 F.3d 1313, 1320 (11th Cir. 2001) (None of the defendants were subject to liability under section 15 "since there [were] no actual violators of the securities laws to be held liable with."); *Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 396 (11th Cir. 1996).

---

[23] Importantly, the 11th Circuit has held "[n]o discovery rule applies to claims brought under section 12(a)(1)." *Fedance*, 1 F.4th at 1286.

[24] Nothing in the complaint supports its bare allegation that Mr. O'Neal holds a "position" with Astrals, LLC or owns *any* interest in it, including the one slide that refers to him as a founder. *See* Comp. ¶ 17. The complaint falls far short of adequately alleging control.

Second, even if a primary violation had been adequately alleged, a section 15 violation would require pleading and proof that Mr. O'Neal "(1) [] had power or influence over the controlled person and (2) [] induced or participated in the alleged violation." *Ehlert*, 245 F.3d at 1320 (quoting *Dennis*, 918 F.2d at 509). Plaintiff's conclusory allegation that Mr. O'Neal is a control person fails to satisfy either element. The complaint alleges that Mr. O'Neal is a control person "by virtue of his office, stock ownership, agency, agreements or understandings, and specific acts." Comp. ¶ 111. The complaint failed to plead a single fact to support its bare allegation that Mr. O'Neal has any "office, stock ownership, agreement or understanding" with Astrals, LLC.[25] Another conclusory allegation asserts that Mr. O'Neal "jointly participated in, and/or aided and abetted, the Astrals Project's failure to register the Astral Securities." Comp. ¶ 114. This is circular gibberish. One can't have "failed to register" something that isn't a security. Moreover, the complaint asserts no conduct by which Mr. O'Neal induced or participated in the actual sale of Astrals to plaintiff or anyone else. Mr. O'Neal is not a control person under section 15 and Count II requires dismissal.

**C.     The Court Should Dismiss Count III and Count IV Because Mr. O'Neal is Not a "Seller" Subject to Liability Under FSIPA, and Because FDUTPA Does Not Apply to Securities Claims**

As demonstrated above in Section II(B), plaintiff lacks standing to assert the Florida claims under FSIPA and FDUTPA, which alone requires dismissal of Counts III and IV. Even if that were not so, both Counts would require dismissal.

**1.     Plaintiff's FSIPA Claim Fails Because Mr. O'Neal is Not a Seller and The Purchase and Sale Did Not Take Place in Florida**

First, the complaint insufficiently alleged that Mr. O'Neal is a "seller" who could be liable under FSIPA. Section 517.07 applies to only two groups: (1) the "person making the sale" of an unregistered security, and (2) directors, officers, partners, and agents of the seller who "personally participate[] or aid[] in making the sale." Fla. Stat. § 517.211(1); *see J.P. Morgan Sec., LLC v. Geveran Invs. Ltd*., 224 So. 3d 316, 327 (Fla. 5th DCA 2017). The complaint alleges that Mr. O'Neal falls within the second category (Comp. ¶ 120), but fails to allege that he

---

[25] Astrals, LLC is not a corporation. Ownership interests in LLCs are seldom "stock holdings," because LLCs typically do not issue stock. Like the complaint's other drive-by allegations discussed above, this one demonstrates a reliance on boilerplate assertions of legal conclusions based on no facts.

is a "director, officer, partner, [or] agent" of Astrals, LLC. Only persons on "the list of people enumerated in the statute . . . may be liable." *Geveran Invs.*, 224 So. 3d at 329. Conclusory allegations, unsupported by facts, are insufficient to establish agency, and warrant dismissal. *Trilogy Props.*, 2010 WL 7411912, at *12.

Further, the requirement that Mr. O'Neal have personally participated or aided in making the sale necessarily "implies some activity in inducing the purchaser to invest." *See Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005). Mr. O'Neal must have actively and directly, not passively, derivatively, or by attribution or imputation, influenced or induced the investor to buy. *See id.* No amount of involvement in the business of the seller will overcome the lack of personal participation or aid in making a sale. *See id.* at 1313; *Turk v. Pershing LLC*, 2014 WL 12572906, at *4 (N.D. Tex. 2014) (dismissing FSIPA claim because allegations that defendant was a "behind-the scenes actor in" an underlying scheme did not amount to "conduct that could be construed as inducement").

Here, even if plaintiff had standing to bring an FSIPA claim, the complaint's allegations would remain legally insufficient because it doesn't allege that Mr. O'Neal "personally participated" in the sale of Astrals to plaintiff. The complaint alleges only that: (1) "Defendant is a director, officer, partners or agent of or for seller;" and (2) "The Astrals Project, with Defendant's material assistance, offered and sold the unregistered Astrals NFTs to Plaintiffs [more boilerplate—only one plaintiff here] and the members of the Class." Comp. ¶¶ 124-125. These conclusory statements, without specific factual allegations (that do not exist), are simply insufficient to sustain an FSIPA claim. *See Dillon*, 385 F. Supp. 2d at 1313 (granting post-trial motion to dismiss FSIPA claim where plaintiffs offered only evidence of defendant's involvement in furthering the seller's business, but not in the actual sale of securities to the plaintiff); *Turk*, 2014 WL 12572906, at *4 (dismissing FSIPA claim where plaintiffs failed to allege that defendant had any meaningful contact with buyers or was active at the point of sale).

Plaintiff's FSIPA claim also fails for lack of privity. "[F]or a buyer to have a claim under Florida Statutes § 517.211, buyer/seller privity must exist." *Trilogy Props.*, 2010 WL 7411912, at *19. Plaintiff does not allege (because he cannot) that Mr. O'Neal is in privity with him. Plaintiff alleges that he purchased his Astrals from Astrals Project, not Mr. O'Neal. Comp. ¶ 83. There is no privity.

Third, plaintiff's FSIPA claim fails because the complaint did not allege that any portion

of the alleged sale took place in Florida. "[I]t is presumed that a state's securities act do not apply when the sale of the security occurred entirely in another state." *HCM High Yield Opportunity Fund, LP v. Skandinaviska Enskilda Banken AB*, 2001 WL 36186526, at *22 (S.D. Fla. 2001) (citing *Allen v. Oakbrook Sec. Corp.*, 763 So. 2d 1099, 1101 (Fla. 4th DCA 1999)). To determine "whether the sale occurred within Florida, courts look to various aspects of the sale." *Zalazar v. Capital Force, LLC*, 2023 WL 4186397, at *8 (S.D. Fla. 2023) (citing *Goldstein v. Firer*, 2022 WL 17343638, at *5 (S.D. Fla. 2022)).

The complaint did not (and could not) plead that any aspect of plaintiff's Astrals purchases occurred in Florida. Instead, the complaint makes the flimsy allegation that Mr. O'Neal "[s]pecifically targeted Florida residents" because he once was a star player for the Miami Heat and Orlando Magic, and has hosted events in Florida. Comp. ¶ 38. Plaintiff does not allege that he was solicited at any such event. He doesn't even allege that he is a Heat or Magic fan (and it would be legally irrelevant if he was). Plaintiff *does* allege that the Astrals Project, not Mr. O'Neal, "targeted" Florida residents by displaying Astrals in a Solana store in the Wynwood area of Miami. *See* Comp. ¶ 39. Further, the article plaintiff cites states that this storefront opened in August 2022, *six months after* plaintiff began purchasing Astrals. *Id*. Plaintiff failed to allege that he purchased Astrals at this store or even saw the display in this store, and the complaint gives no basis for alleging that his purchase took place in Florida.

Even if plaintiff had standing to bring Count III, dismissal would be required.

### 2. Plaintiff's FDUTPA Claim Fails Because FDUTPA Does Not Apply to Securities Claims, and Even if it Did, the Complaint Still Would Fail to State a Claim

As is the case with the Count III's purported FSIPA claim, plaintiff lacks standing to bring Count IV's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim under Fla. Stat. § 501.204(1), because none of the conduct at issue occurred in Florida. FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices." *Id.*

But even if plaintiff had standing, FDUTPA has consistently been held inapplicable to securities claims. *E.g.*, *Rogers v. CISCO Sys., Inc.*, 268 F. Supp. 2d 1305, 1316-17 (N.D. Fla. 2003) (dismissing FDUTPA claim arising from securities transactions because FDUTPA does not apply to securities claims); *Rogers v. Nacchio*, 2006 WL 7997562, at *14-15 (S.D. Fla. 2006) (FDUTPA does not apply to securities claims). Even assuming *arguendo* that Astrals NFTs

could be securities, this alone would warrant dismissal of Count IV. *Feng v. Walsh*, 2021 WL 8055449, at *13 (S.D. Fla. 2021), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. 2022).

Even if this Court were to find that FDUTPA could apply to securities claims (that arose in Virginia), or that Astrals are not securities, the complaint failed to allege the elements of this claim. To survive a motion to dismiss, a plaintiff must allege (1) a deceptive or unfair practice, (2) causation, and (3) damages. *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 2017 WL 8751753, at *3 (S.D. Fla. 2017); *Midway Labs USA, LLC v. S. Serv. Trading, S.A.*, 2020 WL 2494608, at *3 (S.D. Fla. 2020) ("Failure to meet any of the elements results in dismissal."). Plaintiff failed to adequately allege any of these elements.

To establish a deceptive act, a plaintiff must plead and prove that a representation, omission, or practice likely would deceive a consumer acting reasonably under the circumstances. *Coldstone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983-84 (11th Cir. 2016) ("To satisfy the first element, the plaintiff must show that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstance."). A practice is unfair if it "'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1353 (S.D. Fla. 2017) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

Plaintiff did not (and could not) identify a single "act or practice" that was deceptive or unfair in connection with his Astrals purchases. Instead, the complaint again merely recites boilerplate legal conclusions and alleges that "[d]efendant has violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers." Comp. ¶ 131. This conclusory allegation fails to identify a single deceptive or unfair act. That failure infects the rest of the complaint as well.

Plaintiff's entire claim rests on the notion that consumers acting reasonably in the circumstances were deceived by a tweet, a background, or a meme, but the complaint fails to allege what about them was deceptive or unfair. *See* Comp. ¶¶ 22, 26, 27, 28, 31, 33. In paragraph 132, the complaint for the first time alleges that the "unfair and deceptive practices

26

and acts" were false advertising, but offers no facts in support. Nor does the complaint identify any purported conduct that offended public policy. There was nothing scandalous, misleading, immoral, or injurious to consumers in any of Mr. O'Neal's words or actions. Accordingly, the complaint fails to allege a deceptive act or unfair practice.

Even if this were not so, the complaint's FDUTPA claim still would fail for lack of causation and damages. To be actionable, an unfair or deceptive act must cause loss or damage to a consumer. *Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998). Damages "under FDUTPA must directly flow from the alleged deceptive act or unfair practice." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012). Causation must be direct— not merely remote or speculative. *Id.*; *Pinnacle Foods of Cal., LLC v. Popeyes La. Kitchen, Inc. Rest. Brands Int'l, Inc.*, 2022 WL 17736190, at *10 (S.D. Fla. 2022).

This Count did not (and could not) allege any actual damages because of the simple fact that it doesn't allege that plaintiff sold any of his Astrals, let alone sold them at a loss. He has no actual damages, period, full stop. This is another reason why plaintiff lacks Article III standing to bring this claim, as demonstrated above.

But even if plaintiff could allege any purported damages, this count still would require dismissal for failure to allege a direct causal nexus between anything Mr. O'Neal is alleged to have said or done and any alleged damages. *Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687, 696-97 (S.D. Fla. 2016). Again, plaintiff recites mere buzzwords and legal conclusions based on no facts, leaving it to Mr. O'Neal and the Court to scour the complaint for allegations of causation. *See* Comp. ¶ 133 ("The harm suffered by Plaintiffs [sic] and consumers in the Florida Subclass was directly and proximately caused by the deceptive and unfair practices of Defendant, as more fully described herein."). Wrong. Nothing unfair or deceptive was "described herein."

The complaint alleges no connection between Mr. O'Neal's conduct and any purported injury. In fact, the complaint fails even to allege that plaintiff ever saw Mr. O'Neal's tweets, background, or meme. But even if that had been alleged, it would be legally insufficient to allege causation. *In re Ethereummax Inv. Litig.*, 2022 U.S. Dist. LEXIS 220968, at *57-59 (C.D. Cal. 2022) (allegation that plaintiffs "viewed numerous celebrity endorsements" held insufficient to plead causation under FDUTPA).

As noted above, the complaint fails to allege actual damages, which a FDUTPA plaintiff must plead and prove. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). "Actual

damages" are "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984). The complaint is wholly devoid of any such allegations of damages, and Count IV fails to state a claim.

Despite having no standing, no damages, and no unfair or deceptive acts to complain of, plaintiff demands injunctive and declaratory relief for a Florida subclass that he lacks standing to represent (because his claims arise, if at all, in Virginia, not Florida). Comp. ¶ 132. Although FDUTPA supports injunctive relief as well as damages, that fact "cannot supplant Constitutional standing requirements. Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015). This plaintiff hasn't even alleged damages proximately caused by unlawful conduct, let alone a basis for enjoining anything he claims Mr. O'Neal did or does.

Plaintiff again recites legal buzzwords based on no facts, and merely asserts that he has "suffered and will continue to suffer irreparable harm." Comp. ¶135. This is not a sufficient allegation of actual damages or a threat of future harm. In paragraph 83, plaintiff lists the Astrals he allegedly purchased, and in paragraph 84 alleges that he "sustained damages." But he has no actual damages until and unless he sells his Astrals at a loss. That is not alleged, which renders this allegation false (and frivolous). Plaintiff fails even to allege that he hoped to someday sell his Astrals for a profit.[26] All of this is legally insufficient under FDUTPA, without even considering the rigorous standard applicable to the extraordinary relief of an injunction.

Finally, some courts hold that a FDUTPA damages claim must satisfy Rule 9(b)'s heightened pleading standard for fraud claims. *Compare Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009, 1021-22 (M.D. Fla. 2019) ("As a threshold matter, this Court declines to impose the heightened pleading standard set forth in Rule 9(b)[.]") *with Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at *3 (M.D. Fla. 2012) ("[T]his Court concludes that where the gravamen of the [FDUTPA] claim sounds in fraud, as here, the heightened pleading

---

[26] If plaintiff were to argue that the value of his Astrals NFTs has decreased over time, this would not render his purported damages any more concrete or less speculative, which is insufficient to state a claim under FDUTPA. *Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937, 939 (Fla. 3d DCA 1987).

standard of Rule 9(b) would apply."). As demonstrated above, however, plaintiff's "fact-free" pleading style even fails to satisfy Rule 8's baseline standards. *See Maceda v. City Watch Protective Servs., Inc.*, 2019 WL 1385087, at *2 (S.D. Fla. 2019) ("This fact-free recitation of select elements of enterprise coverage does not satisfy Rule 8."); *see Twombly*, 550 U.S. at 555 (pleadings that offer mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient under Rule 8).

For these numerous reasons, this Court should dismiss plaintiff's purported FDUTPA claim.

### D.    The Complaint Failed to Adequately Allege the Virginia State-Law Claims, Requiring Dismissal of Count V And Count VI

The complaint inadequately alleges claims under Sections 13.1-501, *et al.,* of the Virginia Code (the Virginia Securities Act ("VSA")) (Count V), and Sections 59.1-196, *et al.*, of the Virginia Code (the Virginia Consumer Protection Act ("VCPA")) (Count VI). Even assuming *arguendo* that (1) dismissal of the federal Securities Act claims were not required, (2) the Court could have subject matter jurisdiction over those federal claims, (3) the state law claims did not have to be dismissed under 28 U.S.C. § 1367(c)(3), and (4) Astrals could be deemed securities under the VSA, Count V still would require dismissal because Mr. O'Neal is not a "seller." Likewise, even assuming for the sake of argument that dismissal of the supplemental state law claims were not required, Count VI still would require dismissal for failure to adequately allege the elements of a VCPA claim, including failure to allege *any* fraudulent act, much less to do so with particularity that satisfies Rule 9(b).

#### 1.    Plaintiff's Virginia Securities Act Claim is Legally Insufficient

The VSA generally prohibits the offer and sale of unregistered securities. *See* Va. Code § 13.1-507 (registration); § 13.1-514 (exemptions). Civil liability under the VSA (under § 13.1-522(A)) for selling unregistered securities required by Section 13.1-507 to be registered necessarily requires the offer and sale of a security. As demonstrated above in Section I, Astrals are not securities under federal law. Because the VSA's definition of a security "mirrors" federal law, Astrals are not securities under Virginia law, either. *See Bazemore v. Epps*, 54 Va. Cir. 305, at *2 (Va. Cir. 2001).

Even assuming that this were not so, the VSA claim (Count V) still would fail as a matter of law because Mr. O'Neal was not the "seller" of anything the plaintiff alleges he bought. As demonstrated above in Sections III(A)(1) and (C)(1), the complaint does not allege that Mr.

O'Neal sold Astrals to plaintiff. The complaint offers but a conclusory allegation that Mr.
O'Neal "assisted in" and "actively participated in" the offer and sale of the Astrals to plaintiff.
Comp. ¶ 140.

This assertion would be legally insufficient even if weren't false, because unlike Section
12(a)(1) of the Securities Act, the "mere solicitor" of the sale of a security is not a "seller" under
the VSA. *Atocha Ltd. P'ship v. Witness Tree, LLC*, 65 Va. Cir. 213, at *6 (Va. Cir. 2004).[27] Even
if what plaintiff bought were securities and supplemental jurisdiction existed, Count V would
require dismissal for failure to adequately allege that Mr. O'Neal was a seller under the VSA.

### 2. *Plaintiff's Virginia Consumer Protection Act Claim Fails to Allege Any Fraud, Let Alone Satisfy Rule 9(b)*

To state a claim under the VCPA, "a plaintiff must allege (1) *a fraudulent act* (2) by a
supplier (3) in a consumer transaction." *BHR Recovery Communities, Inc. v. Top Seek, LLC*, 355
F. Supp. 3d 416, 424 (E.D. Va. 2018) (emphasis added) (applying Va. Code § 59-1.200(A),
which prohibits fraudulent acts and practices in consumer transactions). "As a claim sounding in
fraud," a VCPA claim must satisfy the heighted pleading standard of Rule 9(b). *Wynn's
Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015). This requires pleading
"with particularity the circumstances constituting fraud or mistake, including the time, place, and
contents of the false representations, as well as the identity of the person making the
misrepresentation and what he obtained thereby." *Id.*; *see Omnipol, A.S. v. Multinational Def.
Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) ("Under Rule 9(b), claims of fraud must be
plead with particularity, which means identifying the who, what, when, where, and how of the
fraud alleged.").

The complaint's laundry list of legal conclusions reciting the elements of a VCPA claim
does not satisfy Rule 9(b). No fraud was pleaded, let alone with particularity. *See* Comp. ¶¶ 142-
49; *Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 918 (W.D. Va. 2022) (dismissing a
VCPA claim for insufficient factual allegations); *Maines v. Guillot*, 2016 WL 3556258, at *3
(W.D. Va. 2016) (dismissing a VCPA claim because "plaintiff merely allege[d], in vague and
conclusory fashion, that the defendants engaged in unfair and deceptive practices in violation of
the VCPA."). This plaintiff's complaint failed to connect any facts to Count VI's recitation of

---

[27] Plaintiff made no attempt even to allege control person liability under the VSA.

legal conclusions, let alone any facts supporting a claim that sounds in fraud.

The incorporated allegations from the rest of the complaint cannot save Count VI either. Plaintiff's case is based on (1) three tweets from Mr. O'Neal, (2) a tweet from a non-party showing a background at one of Mr. O'Neal's shows, and (3) a generic meme. *See* Comp. ¶¶ 22, 26, 27, 28, 31, 33. None of the statements that Mr. O'Neal allegedly made were even alleged to be false or misleading. Further, none of those statements made any material representations about Astrals, let alone false representations known to be false when they were made. *See Nationwide Mut. Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502, 533 (E.D. Va. 2011) ("[T]o state a cause of action for a violation of [the VCPA], plaintiff must allege a fraudulent misrepresentation of fact."). If ever there was a complaint that "merely alleged a consumer fraud claim in vague and conclusory fashion," it is this one. Plaintiff's VCPA claim is legally deficient and should be dismissed for failure to satisfy Rule 9(b).

Further, the VCPA also required the complaint to allege reliance on particularly pleaded, fraudulent statements that the complaint didn't even allege. *Liberty Univ.*, 602 F. Supp. 3d at 918; *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 846 (E.D. Va. 2015). The complaint contains no allegations that plaintiff ever saw the alleged tweets, background, or meme, let alone that he relied on them in deciding to buy Astrals. Further, plaintiff did not (and could not) plead any facts to show that the alleged tweets, background, or meme proximately caused him damages (even assuming *arguendo* that he has any damages). *See Cooper v. GGGR Inv., LLC*, 334 B.R. 179, 188 (E.D. Va. 2005) ("[I]n order for a claimant to recover for a VCPA violation, his loss must be the result of . . . the violation . . . . [T]his causal connection cannot exist without the consumer's reliance on the misrepresentation.").

Finally, although the complaint alleges that Mr. O'Neal advertised Astrals (he did not), it does not allege that he was a seller of Astrals, let alone a seller of Astrals to plaintiff. Only sellers (not their agents) are subject to liability under the VCPA. *See Borg v. Warren*, 545 F. Supp. 3d 291, 322 (E.D. Va. 2021) (dismissing a VCPA claim because the VCPA does not extend liability to the agents of a company—only to sellers). Even if the Court had supplemental jurisdiction over Count VI, dismissal would be warranted.

## **CONCLUSION**

For all the good and sufficient reasons set forth above, Mr. O'Neal respectfully requests that the Court enter an order granting this motion and dismissing the complaint with prejudice.

## **REQUEST FOR HEARING**

In accordance with Local Rule 7.1(b)(2), Mr. O'Neal respectfully submits that oral argument will be useful in adjudicating this motion, in view of the legal complexities and matters of first impression in this district, and would further the court's understanding of the multiple grounds for dismissal with prejudice. Mr. O'Neal estimates that one hour would be sufficient for oral argument on this motion.

Dated: July 20, 2023                                Respectfully submitted:

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: jmestre@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: strujillo@riveromestre.com
E-mail: jdonato@riveromestre.com

By:    s/ Jorge A. Mestre
JORGE A. MESTRE
Florida Bar No. 88145
ALAN H. ROLNICK
Florida Bar No. 715085
SYLMARIE TRUJILLO
Florida Bar No. 112768
JOSEPH DONATO
Florida Bar No. 1025371

## **CERTIFICATE OF SERVICE**

I certify that on July 20, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: s/ Jorge A. Mestre
JORGE A. MESTRE

32