UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 23-CV-21912-MORENO

DANIEL HARPER, *et al.*, on behalf of themselves
and all others similarly situated,

    Plaintiffs,
v.

SHAQUILLE O'NEAL, *et al.*,

    Defendants.
_____/

**PLAINTIFFS'** *UNOPPOSED* **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF PROPOSED SETTLEMENT CLASS, AND APPROVAL OF THE PROPOSED SCHEDULE**

Plaintiffs[1] are proud to announce they have reached a proposed settlement ("**Settlement**") for the class that provides full relief to all injured class members ("**Settlement Class Members**"). This Settlement was only reached after great efforts by mediator and retired Judge Howard Tescher, this Court's expeditious supervision of the litigation, and the willingness of the Defendants to reach a fair and equitable compromise. A copy of the Settlement Agreement is attached as **Exhibit A**.

Hundreds of thousands of Non-Fungible Tokens ("**NFT**"), issued by many different issuers, have been purchased by millions of customers during the crypto craze. Unfortunately, many of these NFTs have: (1) been found by courts to be "unregistered securities," and (2) many of the issuing companies have gone bankrupt, leaving investors with tremendous losses. Thousands of Settlement Class Members in this action purchased alleged unregistered securities from Defendants, in the form of Astrals Non-Fungible Tokens ("**Astrals NFT**") and Galaxy Tokens ("**GLXY**" and together with the Astrals NFTs, the "**Astrals Financial Products**"), which are now worth only a fraction of the price Settlement Class Members paid.

Plaintiffs and Astrals LLC, Astrals Holding, LLC, and Astrals Operations LLC (the "**Astrals Entities**"), and Shaquille O'Neal ("**O'Neal**" and together with the Astrals Entities,

---

[1] "**Plaintiffs**" means Daniel Harper, Daniel Koch, Micky Scott, Shaun Divecha, Timo Walter, and/or Viraf Sam Chapgar.

1

"**Settling Defendants**") decided to mediate this matter and to settle all disputes in order to help investors. With the creativity, crypto experience, and guidance of Mediator Howard Tescher, the proposed Settlement is flexible so as to provide full relief to all Settlement Class Members under both common and statutory law. The Defendants have agreed to provide $11,000,000.00 of monetary relief by establishing a common fund (the "**Settlement Cap**") from which all approved Class Member Claims, Administration Costs, general release payments, and Class Counsel Fees and Costs will be paid.

Plaintiffs and the Settling Defendants (collectively, the "**Parties**") retained the services of Strategic Claims Services (the "**Claims Administrator**") to provide and serve notice to the class (the "**Class Notice**") and to process and administer claims from Settlement Class Members. The Class Notice, attached hereto as **Exhibit D**, will provide the best notice practicable, consistent with the methods and tools employed in other court-approved notice programs, and will allow Settlement Class Members the opportunity to review a plain-language notice with the ability to easily take the next step and learn more about the litigation. The Class Notice will contain the mandatory disclosures of settlement terms as required by Federal Law, including Rule 23 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "**PSLRA**"). The Claims Administrator will develop a claims portal to be hosted at a domain name reasonably agreed upon by the Parties. Through the claims portal, claimants will be able to provide all necessary information required to file a claim, and the Claims Administrator will assess the claim and, if approved, distribute cash payments from the Settlement Cap fund. Settlement Class Members and Defendants will have adequate opportunity to contest the Claims Administrator's decisions if those parties disagree with the Claims Administrator's determinations.

Plaintiffs, the proposed class representatives, therefore request that the Court: (1) grant preliminary approval of the Settlement; (2) grant certification of the proposed Settlement Class; (3) appoint Plaintiffs as Rule 23(c) class representatives; (4) appoint Adam Moskowitz of The Moskowitz Law Firm, PLLC ("**Lead Class Counsel**"), who was previously appointed lead counsel under the PSLRA, as lead class counsel pursuant to Fed R. Civ. P. 23(c)(1)(B) and 23(g); and (5) approve the proposed plan of notice to the Settlement Class pursuant to Fed. R. Civ. P. 23(e). Settling Defendants do not oppose this motion.

I.      **LITIGATION OVERVIEW**

Plaintiffs commenced this putative global class-action lawsuit entitled *Daniel Harper, et al. v. Shaquille O'Neal*, Case No.: 1:23-cv-21912-FAM (S.D. Fla.), on May 23, 2023 [ECF No. 1]. Plaintiffs filed their Amended Complaint ("**Amended Complaint**") [ECF No. 24] on September 7, 2023, clarifying the claims against O'Neal and asserting claims against the Astrals Entities. On September 13, 2023, the Court appointed Adam Moskowitz of The Moskowitz Law Firm as Lead Class Counsel and Plaintiffs—Daniel Harper, Daniel Koch, Micky Scott, Shaun Divecha, Viraf Chapgar, and Timo Walter—as lead plaintiffs pursuant to § 27 of the Securities Act of 1933 as amended by the PSLRA, finding them to be typical and adequate. ECF No. 30. The claims against the Settling Defendants are on behalf of a putative class of similarly situated individuals who purchased Astrals NFTs and GLXY tokens asserting that the Settling Defendants were sellers of these unregistered securities in violation of Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e(a), 77l(a)(1) and control persons in violation of Section 15 of the Securities Act.

O'Neal moved to dismiss the Amended Complaint and strike the proposed expert opinion of Lee Reiners on September 29, 2023 [ECF No. 35], which motions the Astrals Entities later joined [ECF No. 47], and all Settling Defendants filed a Supplemental Motion to Dismiss on April 18, 2024 [ECF No. 83]. On August 16, 2024 the Court granted in part and denied in part Settling Defendants' Motion to Dismiss [ECF No. 91]. First, the "Court denie[d] Defendants' Motion to Dismiss Count I as Plaintiffs have properly alleged that O'Neal is a 'seller' under Section 12." ECF No. 91 at 4. In so ruling, the Court held that Plaintiffs "sufficiently alleged that Astrals [NFTs] and Galaxy tokens are 'securities' subject to federal securities laws." *Id.* Second, the Court agreed with Settling Defendants that Plaintiffs' Section 12 claims for purchase of Astrals NFTs on or before May 23, 2022 were time-barred (*id.* at 10-11), but held that the GLXY tokens claims were not time-barred, at least at the motion to dismiss stage, as Plaintiffs alleged GLXY purchases between March 10, 2022 and June 15, 2022 (*id.* at 11-13). Finally, the Court dismissed Plaintiffs' Section 15 claims against O'Neal, holding that he was not a "control person." *Id.* at 4.

On August 16, 2024, the Court denied Settling Defendants' Supplemental Motion to Dismiss, holding that Plaintiffs had "sufficiently pled facts concerning 'the formation of contracts to buy or sell securities, the placement of purchase orders, the passing of titles, or exchanges of money, within the United States.'" ECF No. 95 at 2-3.

3

On September 12, 2024, Settling Defendants filed their Joint Answer and Affirmative Defenses, asserting various legal defenses to Plaintiffs' claims. ECF No. 97. Most notably: Settling Defendants asserted that (i) the Astrals Financial Products are not securities; (ii) Plaintiffs' claims based on purchases on or before May 23, 2022 are time-barred; (iii) the federal securities laws do not apply to some or all of the sales of the Astrals Financial Products because those transactions were not U.S. domestic transactions; and (iv) some Plaintiffs' and putative class members' claims are barred by the *in pari delicto* doctrine, as those persons may also be "sellers" of the Astrals Financial Products.

The Parties then began the discovery process, hiring vendors for data collection and scheduling preliminary depositions. The Parties then filed a Joint Motion for Brief Stay [ECF No. 105] while settlement discussions and mediation were ongoing. That motion was granted, and it stayed discovery until November 20, 2024. *See* ECF No. 106.

Since then, Plaintiffs also became alerted to the fact that the Astrals Project is no longer an ongoing concern. Indeed, on October 30, 2024, Astrals announced on their Discord that "the financial strain has become substantial. Legal fees have exceeded our initial expectations, and the case has stretched on longer than anticipated." Astrals added that "bankruptcy now appears inevitable. As a result, we will need to remove tokens from the liquidity pool provided by a third party. This has not been an easy decision, and it has placed a significant strain on all of our lives."

## II.     SETTLEMENT CONSIDERATION

In consideration for full and final settlement of the class claims asserted against the Settling Defendants in the Action, and in consideration of the Releases set forth therein, the Settling Defendants will be responsible for paying the Settlement Cap fund of no more than $11,000,000. In exchange for a full release of the claims against Settling Defendants and their related releasees (as defined in the Settlement Agreement), the Settlement Cap will be used to pay (i) valid claims approved by the Claims Administrator, after resolution of any objections to the Claims Administrator's determinations, (ii) Plaintiffs' attorneys' fees and costs, (iii) the costs of administration of the claims and notice process, (iv) a broad, general release payment to Plaintiffs, and (v), to the extent there are remaining funds, pay a *cy pres* award to the non-profit organization Americans for Financial Reform.

### III. SETTLEMENT CLASS CERTIFICATION

The Settlement requires conditional certification of the settlement class ("**Settlement Class**") pursuant to Federal Rule of Civil Procedure 23(b)(3). The Parties agree that, for Settlement purposes only and pursuant to the terms of the Settlement, the Plaintiffs will serve as class representative plaintiffs, and Adam Moskowitz of The Moskowitz Law Firm, PLLC ("**Lead Class Counsel**") will serve as lead class counsel pursuant to Federal Rules of Civil Procedure 23(c) and 23(g).

#### A. The Settlement Class

The Settlement Class is "All persons or entities (i) who, from May 24, 2022 to the date of preliminary approval, purchased Astrals NFTs and/or who, (ii) who, before the date of preliminary approval, purchased GLXY Tokens." *See* Ex. A at ¶ 10. Excluded from the Settlement Class are (i) the Settling Defendants and their officers, directors, affiliates, legal representatives, and employees, (ii) any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff, and (iii) any Person who would otherwise be a Class Member but who validly requested exclusion pursuant to the "Opt-Out" provisions set forth in Exhibit A ¶ 13. *Id.*

#### B. Final Approval Hearing

Should the Court grant preliminary approval pursuant to the Settlement, Lead Class Counsel requests that the Court set a final approval hearing at a date that comports with a schedule agreed to by the Parties and described below.

#### C. Objections

The Settlement provides that a Settlement Class Member may object to the Settlement. To object, the Settlement Class Member must comply with the procedures and deadlines approved by the Court. Any Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and the proposed Preliminary Approval Order (attached as **Exhibit B**). The written objection must be filed with the Clerk of Court and received by Lead Class Counsel and Settling Defendants' Counsel no later than forty-five days (45) from the date the Class Notice is published (the "**Objection/Exclusion Deadline**"). The requirements to assert a valid written objection shall be set forth in the Class Notice.

### D. Class Counsel Fees and Expenses

Lead Class Counsel and their co-counsel (collectively "**Class Counsel**") plan to petition the Court for reimbursement of attorneys' fees and costs ("**Class Counsel Fees and Costs**"). Class Counsel shall not seek Class Counsel Fees and Costs in an aggregate amount that exceeds $2,910,000. Any attorneys' fees payment shall be paid from the Settlement Cap fund. Class Counsel's motion for Class Counsel Fees and Costs shall be filed no later than fourteen (14) days before the Objection/Exclusion Deadline.

Further, each of the Plaintiffs has agreed to sign in his or her individual capacity a broad, general release in favor of the Settling Defendants in exchange for a payment of $15,000, to be paid separate and apart from any approved claims paid out of the Settlement Cap fund. The release payments will be paid out of the Cost and Fees Payment.

## IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A. Standards for Preliminary Approval of a Proposed Settlement

A class action may be settled only with the approval of the Court. *See* Fed. R. Civ. P. 23(e)(1). The Rule 23(e) settlement approval procedure has three principal steps: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected Settlement Class Members; and (3) a final approval determination following a fairness hearing at which Settlement Class Members may be heard regarding the settlement, and at which counsel may introduce evidence and present arguments concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 13:39 *et seq.* (5th ed. 2014).

Rule 23(e)(1), as amended in 2018, provides that notice should be given to the class, and hence preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under a Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); *see also id*. 2018 Amendment Advisory Committee Notes. Under Rule 23(e)(1)(B)(i), final approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

To grant preliminary approval, the Court should determine whether the proposed settlement substantively falls "within the range of possible approval" or reasonableness. *Encarnacion v. J.W. Lee, Inc.*, No. CV 14-61927, 2015 WL 12550747, at *1 (S.D. Fla. June 30, 2015) (unpublished); *see also*, 4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002). The Court should approve a proposed class action settlement where it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (*citing Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Settlement negotiations involving arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* Manual for Complex Litig. § 30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted). Public policy favors settlements, particularly where complex class action litigation is concerned. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021). The proposed Settlement here satisfies the standard for preliminary approval because: (1) Plaintiffs and Lead Class Counsel have adequately represented the class; (2) the Settlement is the product of arm's-length negotiations between the parties and (3) the Settlement is adequate, as it is very reasonable, especially when considering the risks involved in litigating the case to trial; and (4) the Settlement treats the Settlement Class Members equitably relative to each other.

### 1. The Class Has Been Adequately Represented

The adequacy inquiry is two-fold. First, the Court must assure itself that the named

representatives will adequately and diligently represent the class members' interests and that no potential conflicts in interest will interfere with this representation. *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940). Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Class. Both Plaintiffs and the Settlement Class Members allegedly purchased Astrals Products, which are allegedly unregistered securities, from the Settling Defendants.

Second, the Court must determine that the class's attorneys will adequately represent the class's interests. Class Counsel are experienced in class-action litigation and in cryptocurrency-related class-action litigation, and their firms' CVs highlight their skills and experience. *See* ECF No. 15 at 12 n.10. Copies of Class Counsel's CVs are attached hereto as **Exhibit C**. Because Plaintiffs and their counsel have devoted substantive time and resources to this litigation and have adequately represented their clients' interests, the adequacy requirement is satisfied.

### 2. The Settlement Is the Product of Arm's-Length Negotiations

Where a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg § 11.41; *see also Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016). Here, the Settlement was reached after informed, extensive arm's-length negotiations between experienced counsel, and ***multiple mediation sessions*** with an experienced and respected mediator, Howard Tescher. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, slip op. at 25-26 (S.D. Fla. Sept. 14, 2015) (approving settlement and noting that parties' use of a highly respected mediator supported the conclusion that the settlement was not the product of collusion).

The Settling Defendants were represented by experienced counsel. The monetary relief afforded by the Settlement also presents the best possible outcome considering the costs and risks of continued litigation. The Settlement was reached after an extensive investigation into the factual underpinnings of the practices challenged in the civil action, as well as the applicable law, and after the Court ruled on contested dispositive motions. In addition to their pre-filing efforts, Class Counsel engaged in extensive research, including the review of documents, facts and testimony provided by the Lead Plaintiffs. Nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt the Settlement's fairness.

### 3. The Settlement Is Fair, Reasonable, and Adequate

Plaintiffs seek class-wide relief from the Settling Defendants, who were allegedly sellers of now virtually worthless NFTs and cryptocurrency tokens, which Plaintiffs allege are unregistered securities. O'Neal is a famous public figure who was involved in the Astrals project and the sale of Astrals Financial Products. The Astrals Entities were the team involved in the Astrals project and in the sale of the Astrals Financial Products. In exchange for release of the claims against them, the Settling Defendants have agreed to provide cash payments of full recovery to each eligible Settlement Class Member on a "claims-made" basis until the $11 million Settlement Cap is reached.

#### a. The Risks, Costs, and Delay of Continued Litigation

The proposed Settlement provides an excellent recovery, especially in light of the inherent risks of litigation, the Court's partial dismissal of Plaintiffs' Section 12(a)(1) claims (ECF No. 91 at 4), and the current dire financial condition of the Astral entities. Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement—"there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"). This is not only a complex case, but it is in an especially risky field of litigation involving unsettled and novel legal theories—NFT-based securities litigation.

Plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed through full written discovery, depositions, class certification, summary judgment, trial, and a potential appeal. Among the most hotly contested issues in this litigation were the parties' disagreements as to (i) whether the Astrals Financial Products are securities; (ii) whether Settling Defendants can be held liable as "sellers" of the Astrals Financial Products; (iii) whether claims arising from purchases of GLXY tokens made on or before May 23, 2022 are time-barred; (iv) whether Plaintiffs' claims can be adjudicated on a class-wide basis; and (v) whether sales of the GLXY tokens were domestic transactions under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). Although the Court permitted some of Plaintiffs' claims to proceed to discovery, there are still many hurdles to recovery, including a contested class-certification proceeding,

dispositive motion practice, and trial. If unsuccessful, the Settlement Class could receive no recovery at all.

Plaintiffs also became alerted to the fact that the Astrals Project is no longer an ongoing concern. Indeed, on October 30, 2024, Astrals announced on their Discord that "the financial strain has become substantial. Legal fees have exceeded our initial expectations, and the case has stretched on longer than anticipated." Astrals further cautioned that "bankruptcy now appears inevitable. As a result, we will need to remove tokens from the liquidity pool provided by a third party. This has not been an easy decision, and it has placed a significant strain on all of our lives." Accordingly, the risks inherent in this case strongly support settlement at this stage of the litigation.

Further, in considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2020 WL 8256366, at *26 (N.D. Ala. Nov. 30, 2020). Here, Class Counsel endorses the Settlement as fair, adequate, and reasonable. Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters and have conducted an extensive investigation into the factual and legal issues raised in this action. Class Counsel have weighed the benefits of the Settlement against the inherent risks and expense of continued litigation, and they strongly believe that the proposed Settlement is fair, reasonable, and adequate. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs in favor of approving the Settlement.

### b. The Method of Distributing Relief Is Effective

Settlement relief will be distributed via a straight-forward electronic claims process. Payments for approved claims in which Settlement Class Members provide blockchain-verifiable transaction information, such as their public wallet address and the transaction hash related to their purchase of Astrals Financial Products, will be distributed as soon as practicable after approval. Ex. A § 13.

### c. The Terms Relating to Class Counsel Fees and Costs Are Reasonable

Attorneys' fees, costs, and expenses were negotiated separate and apart from, and after reaching agreement on, the relief for the Settlement Class. Upon final approval, Settling Defendants will pay up to $3 million for various costs and payments (the "**Costs and Fees Payment**"), including approved attorneys' fees and payments to the Claims Administrator, leaving up to $8 million for all approved claims made by Settlement Class Members. Ex. A § 16. Plaintiffs

10

will seek Class Counsel Fees and Costs of up to $2,910,000 (up to approximately 26.5% of the Settlement Cap). All costs and expenses, including all costs and fees paid to the Claims Administrator and those associated with the Class Notice, will be paid from the $3 million Costs and Fees Payment. *Id.* The Costs and Fees Payment, in whatever amount set by the Court, is to be paid no later than 21 days after the filing of this motion. *Id.* However, if the Costs and Fees Payment is not approved or is only partially approved by the Court, Settling Defendants are entitled to reimbursement from Plaintiffs and Class Counsel. *Id.*

While the reasonableness of Class Counsel's request for Class Counsel Fees and Costs will be addressed in a separate motion, "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund." *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (citing *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding 33% is consistent with the market rate in class actions)); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming attorneys' fee award of 33 1/3% to class counsel). Accordingly, a request for no more than 26.5% of the Settlement Cap is likely reasonable.

Further, the $15,000 payment to each of the Plaintiffs in exchange for a broad, general release in their individual capacity in favor of the Settling Defendants is permissible in this District. *See Sinkfield v. Persolve Recoveries, LLC*, 2023 WL 511195, at *3 (S.D. Fla. Jan. 26, 2023) (approving settlement where class representative was paid, *not* as "a salary, a bounty, or both," but in exchange for agreeing to a broad release of claims); *Tweedie v. Waste Pro of Fla., Inc.*, No. 8:19-CV-1827-AEP, 2021 WL 5843111, at *11 (M.D. Fla. Dec. 9, 2021) (approving additional compensation for general release waiving all claims against defendants).[2]

### d. The Agreements Required to be Identified by Rule 23(e)(3)

There is one agreement outside of the Settlement Agreement that must be identified by Rule 23(e)(3). The confidential Supplemental Agreement Concerning Termination Threshold among the Settling Parties ("**Supplemental Agreement**") sets forth certain conditions regarding the number and value of opt-out claims that, if triggered, give the Settling Defendants the option to terminate

---

[2]   Specifically, the Plaintiffs have agreed to release Defendants from potential Nevada state-law unjust-enrichment claims that, if not for the settlement agreement, they would have asserted against Defendants.

the Settlement Agreement. Such "blow provisions" are properly kept confidential: "The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out." *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009).

### 4. The Settlement Class Members Are Treated Equitably Relative to Each Other.

The last requirement of the Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Settlement Class Members equitably because all Settlement Class Members are eligible for reimbursement of losses tied to their purchase of Astrals Financial Products (calculated by subtracting the sale price received, if any, for the Astrals Financial Products from the purchase price paid for the Astrals Financial Products).

### B. Certification of the Proposed Settlement Class Is Appropriate

The Parties agree that, for purposes of settlement only, the Settlement Class should be defined as follows: "All persons or entities (i) who, from May 24, 2022 to the date of preliminary approval, purchased Astrals NFTs and/or who, (ii) who, before the date of preliminary approval, purchased GLXY Tokens." The Class meets the requirement of class certification set forth in Rule 23(a) and Rule 23(b)(3).

#### 1. Rule 23(a) Is Satisfied

##### a. The Members of the Settlement Class Are Too Numerous to Permit Joinder

A case may be certified as a class action for settlement purposes only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed rule, numerosity is generally presumed when the potential number of class members reaches forty (40). *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010) (*citing* Newberg & Conte, Newberg on Class Actions, § 3.5 at 247 (4th ed.2002) ("as few as 40 class members should raise a presumption that joinder is impracticable and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone")). Here, numerosity is readily satisfied. The total number of Class members is estimated to be in the thousands, as there are 10,000 Astrals NFTs and millions of GLXY tokens.

### b. This Action Presents Common Questions of Law or Fact

Rule 23(a)(2) requires that there be one or more questions common to the class. *WalMart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). To establish a settlement class, Plaintiffs need only show the existence of a common question of law or fact that is significant and capable of class-wide resolution. *In re Fla. Cement & Concrete Antitrust Litig.*, No. 09-23187-CIV, 2012 WL 27668, at *3 (S.D. Fla. Jan. 3, 2012) (unpublished). Here, commonality is present for the purposes of establishing a settlement class, as the claims of the entire class depend on whether the Astrals Financial Products are securities. In addition, Plaintiffs contend that the Settling Defendants' conduct amounts to successful solicitation such that the Settling Defendants are statutory sellers or control persons under the law, through their conduct as alleged. Thus, because the resolution of at least one of these issues allegedly will affect all proposed Settlement Class Members, commonality under Rule 23 (a)(2) is satisfied.

### c. Plaintiffs' Claims Are Typical.

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met if the claims of the named plaintiffs 'stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory.'" *Gibbs Properties Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 435 (M.D. Fla. 2000) (*quoting*, *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996)). "The key inquiry in determining whether a proposed class has 'typicality' is whether the class representative is part of the class and possesses the same interest and suffers the same injury as the class members." *Medine v. Washington Mut., FA*, 185 F.R.D. 366, 369 (S.D. Fla. 1998).

Here, the typicality requirement is satisfied for purposes of certifying a settlement class for the same reasons that Plaintiffs' claims meet the commonality requirement at this stage. Plaintiffs' claims are typical of those of the Settlement Class because both Plaintiffs and the Settlement Class Members purchased the allegedly unregistered Astrals Financial Products. Moreover, while not determinative of adequacy for purposes of approving a settlement class, the proposed lead plaintiffs needed to "satisfy the requirements of Rule 23" in order to be appointed as lead plaintiffs under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc). The analysis performed in connection with approving a lead plaintiff includes a preliminary determination of typicality and adequacy. *See Steppacher v. Alfi, Inc.*, 2022 WL 1115049, at *6 (S.D. Fla. Apr. 13, 2022). In appointing Adam

Moskowitz of The Moskowitz Law Firm, PLLC as Lead Class Counsel, the Court wrote, Plaintiffs "are the most typical … Lead Plaintiffs to represent the interest of the Classes," suggesting Plaintiffs are typical Settlement Class Members at least for settlement purposes. *Id.* at 2.

### d. Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class Members.

Rule 23(a)(4) requires that the representative plaintiffs "fairly and adequately" protect the interests of the class. The two-prong test for determining adequacy is: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

As noted above, both prongs are satisfied here. First, Plaintiffs and the Settlement Class Members are equally interested in recovering as much of their property and/or recovering damages from the Settling Defendants. Their interests are directly aligned, as evidenced by the fact that Plaintiffs have vigorously prosecuted this case for the benefit of all Settlement Class Members by filing the underlying action, reviewing pleadings, and conferring with Class Counsel. Accordingly, the Plaintiffs will fairly and adequately protect the interests of all Settlement Class Members. Second, though not determinative of adequacy at this stage, the Court previously concluded when appointing lead plaintiffs and lead counsel that Plaintiffs were adequate class representatives and that Lead Class Counsel was adequate class counsel. ECF No. 30 at 2. Finally, Class Counsel have extensive experience litigating and settling class actions, including consumer fraud cases throughout the United States. Class Counsel are well-qualified to represent the Settlement Class. Copies of Class Counsel's Resumes are attached hereto as **Exhibit C**.

### 2. The Requirements of Rule 23(b)(3) Are Satisfied.

For settlement purposes, the proposed Settlement Class satisfies Rule 23(b)(3), which permits certifying a class for settlement purposes if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For settlement purposes, the claims asserted against the Settling Defendants involve common issues of law and fact that predominate over any individual issues. The Settlement resolves alleged unregistered securities claims regarding the alleged sale of the Astrals Financial Products, obviating the need to litigate whether the Astrals Financial Products are securities, whether the Settling Defendants' conduct amounts to being a seller, and

14

the potentially individualized issue of whether Settling Defendants successfully solicited the Settlement Class Members' alleged securities purchases.

Rule 23(b)(3)'s other requirement is that class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The purpose of the superiority requirement is consistent with the overall goals of Rule 23, which are to assure that the class action is the most efficient, effective, and economic means of settling the controversy. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 337 (S.D. Fla. 1996). That is the case here, where the Settlement obviates the need for potentially thousands of trials with respect to several issues, including causation and damages. Resolution of the Settlement Class Members' claims via the Settlement avoids the difficulty in efficiently managing such a large number of trials. Further, the relatively low amount of money at issue for each individual class member supports a finding of superiority. Accordingly, the Settlement Class should be certified for settlement purposes.

## V. THE PROPOSED CLASS NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Should the Court grant preliminary approval, it must also "direct notice in a reasonable manner to all class members who would be bound by the proposal. . . ." Fed. R. Civ. P. 23(e)(1)(B). Notice should be the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (same). Under Rule 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice should adequately describe the substantive claims and information reasonably necessary for class members to decide whether to object to the settlement, whether to exclude themselves from it, or whether to remain in the class member, reap the benefits of the settlement, and be bound by the final judgment. *See Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007). Here, the Class Notice will be published on a Settlement Website and through digital notice, the most practicable method of reaching the largest number of Astrals NFT and GLYX holders; the Class Notice will also be published in a variety of crypto-related industry publications, on the Astrals Discord page (where Astrals previously published updates about the Astrals Financial Products), and individual notice will be sent via email to all Settlement Class Members with email addresses reasonably available to the Settling Parties (the "**Notice Plan**"). The Notice Plan provides the best notice practicable under the circumstances. Fed. R. Civ. P.

23(c)(2)(B).

The forms and methods set forth herein of notifying the Settlement Class Members of the Settlement and its terms and conditions meet the requirements of due process, federal law, and Rule 23 of the Federal Rules of Civil Procedure; constitute the best notice practicable under the circumstances; and constitute due and sufficient notice to all persons and entities entitled thereto. *See, e.g.*, *Griffin v. Benefytt Techs., Inc.*, No. 20-CV-62371-AHS, 2023 WL 8354936, at *2-*3 (S.D. Fla. Dec. 1, 2023) (preliminarily approving notice plan where notice was posted on a settlement website and sent by e-mail and mail where possible). In other cryptocurrency-related class action settlements, where, as here, the parties do not have access to all class members' names, addresses, and email addresses, courts have approved similar notice plans. *See, e.g.*, *Balestra v. ATBCOIN LLC*, No. 17-CV-10001 (VSB), 2022 WL 950953, at *5 (S.D.N.Y. Mar. 29, 2022) (holding that notice plan published on "Lead Counsel's firm website, on a leading blockchain news and media outlet called CoinDesk.com, and on a Reddit forum dedicated to" the coin in question "constitutes the best notice practicable under the circumstances, and meets the requirements of due process," as defendants stated they "are unlikely to have names, e-mails, or physical addresses for potential class members"); *Hunichen v. Atonomi LLC*, No. C19-0615-RAJ-SKV, 2021 WL 5854964, at *11 (W.D. Wash. Nov. 12, 2021) (approving notice plan in cryptocurrency-related class-action settlement involving "direct emailing of notice to all class members and supplemental notice through social media publication and a press release, all with links to a website containing the long form notice, documents about the case, an electronic claim form, and contact information for the designated administrator"), *report and recommendation adopted*, No. 19-0615-RAJ-SKV, 2022 WL 4131590 (W.D. Wash. Sept. 12, 2022).

The Class Notice will provide background about the claims in the Action, the terms of the Settlement, the potential recoveries available to eligible Settlement Class Members, the Plan of Allocation, Lead Class Counsel's application for Class Counsel Fees and Costs, and Plaintiffs' application for Plaintiffs General Release Payments. The Class Notice also will disclose the date, time and location of the Fairness Hearing and the deadlines for seeking exclusion and submitting Claims and any objections to the Settlement, the Plan of Allocation, or to the applications for attorney's fees and expenses and General Release Payments. The Class Notice will comply with the PSLRA and with Fed. R. Civ. P. 23. These disclosures are thorough and should be approved.

The Class Notice is attached here as **Exhibit D**. The specific form of the Notice approved by the Court will then be disseminated in accordance with the Notice Plan.

**Settlement Website**

The Claims Administrator will develop and deploy the informational case-specific website where Settlement Class Members may obtain more information about the settlement. The Class's proposed notice plan satisfies the fairness standards set forth in Rule 23. The proposed notice is the best practicable under the circumstances. The notice is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, their rights to opt-out of the Settlement Class and object to the Settlement and/or Class Counsel's Fee Application. *See In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011). The Class Notice presents all required categories of information clearly and in plain English. *See Adams*, 493 F.3d at 1286. The Class Notice is therefore substantively sufficient.

### VI. CONCLUSION

Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) grant preliminary approval of the Proposed Settlement Class; (3) appoint Plaintiffs as Rule 23(c) class representatives; (4) appoint Adam Moskowitz of The Moskowitz Law Firm, PLLC as Lead Class Counsel pursuant to Fed R. Civ. P. 23(c)(1)(B) and 23(g); and (5) approve the proposed Notice Plan pursuant to Fed. R. Civ. P. 23(e). A proposed Preliminary Approval Order is attached hereto as **Exhibit B**, a proposed final Order Approving Class-Action Settlement is attached hereto as **Exhibit E**, and a proposed Judgment is attached hereto as **Exhibit F**.

Dated: November 18, 2024

By: **/s/ Adam M. Moskowitz**
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
Continental Plaza
3250 Mary Street, Suite 202
Coconut Grove, FL 33133
Telephone: (305) 740-1423

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the forgoing was filed on November 18, 2024, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: **/s/ Adam Moskowitz**
Adam Moskowitz