**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO.: 1:23-cv-21912-FAM**

DANIEL HARPER, *et al.*, on behalf of himself
and all others similarly situated,

Plaintiff,

v.

SHAQUILLE O'NEAL, *et al.*,

Defendants.

_____/

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
FOR AWARD OF ATTORNEYS' FEES, COSTS, AND GENERAL RELEASE
<u>PAYMENTS, AND MEMORANDUM OF LAW IN SUPPORT</u>**

## I.      INTRODUCTION

Plaintiffs and Class Counsel are proud to present for final approval a class action settlement (the "Settlement"), which this Court preliminarily approved [ECF No. 119], on behalf of a class of worldwide purchasers of Galaxy ("GLXY") tokens and Astrals non-fungible tokens ("Astrals NFTs" and collectively, the "Astrals Financial Products") created for the Astrals Project, which were advertised and marketed by Defendants Shaquille O'Neal ("O'Neal"), Astrals LLC, Astrals Holding, LLC, and Astrals Operations LLC (collectively, the "Astrals Entities," together with O'Neal, the "Settling Defendants," and, together with Plaintiffs, the "Settling Parties").

A final approval hearing, as required by Rule 23(e)(2), is scheduled for April 1, 2025. The Settlement provides $11 million in monetary relief to thousands[1] of Class Members from across the globe. As of this date, the Parties have received no opt-outs or objections to final approval.[2] This response to the Settlement is overwhelmingly supportive.

The Settlement's benefits were the result of significant, rigorous arm's length negotiations by the Parties and their counsel, under the direction of a distinguished mediator and retired Judge Howard Tescher. Notice of this Settlement was disseminated to all Class Members via, among other things, (i) internet notice, (ii) establishment of a settlement website, (iii) publication, and (iv) direct mail or email to those Settlement Class Members whose e-mail or mail addresses the Settling Parties actually had and could locate. *See* the Declaration of Sarah Evans, Project Manager of Strategic Claims Services, dated February 12, 2025, attached as **Exhibit A**. This Notice plan was approved by this Court.

Undersigned counsel were well positioned to evaluate and negotiate this Settlement because they litigated this matter against the Settling Parties in this jurisdiction for over a year and additionally have been concurrently litigating against Defendant O'Neal in *In Re: FTX Cryptocurrency Exchange Collapse Litigation,* 23-md-03076-KMM (S.D. Fla.). Class Counsel investigated the Plaintiffs' claims and allegations through extensive fact-finding, including the review of thousands of pages of documents independently, as part of informal discovery, and in consultation with an industry expert. Plaintiffs filed two complaints complying with Private

---

[1] The total number of Class members is estimated to be in the thousands, as there are 10,000 Astrals NFTs and millions of GLXY tokens.

[2] Plaintiffs will provide an updated figure with their March 25, 2025 reply supporting this motion, after the deadline for class members to opt out or object to the Settlement.

Securities Litigation Reform Act of 1995 ("PSLRA") pleading standards and successfully defended against a motion to dismiss. Class Counsel and Defendants' Counsel engaged in weeks of settlement negotiations and drafting settlement documents in order to achieve this significant relief. As such and given the immediate and substantial benefits the Settlement will provide to the Class, there can be no question that the terms of the Settlement are "fair, reasonable, and adequate".

Plaintiffs and Class Counsel respectfully submit that, once the deadline for objections has passed and the Fairness Hearing takes place as previously scheduled, this Court grant final approval of the Settlement. The Proposed Final Approval Order was submitted to this Court with Plaintiffs' Motion for Preliminary Approval of this Settlement, *see* ECF No. 109-5.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs commenced this putative global class-action lawsuit entitled *Daniel Harper, et al. v. Shaquille O'Neal*, Case No.: 1:23-cv-21912-FAM (S.D. Fla.), on May 23, 2023 [ECF No. 1]. Plaintiffs filed their Amended Complaint ("Amended Complaint") [ECF No. 24] on September 7, 2023, clarifying the claims against O'Neal and asserting claims against the Astrals Entities. On September 13, 2023, the Court appointed Adam Moskowitz of The Moskowitz Law Firm as Lead Class Counsel and Plaintiffs as lead plaintiffs pursuant to § 27 of the Securities Act of 1933 as amended by the PSLRA, finding them to be typical and adequate. ECF No. 30. The claims against the Settling Defendants are on behalf of a putative class of similarly situated individuals who purchased Astrals NFTs and GLXY tokens asserting that the Settling Defendants were sellers of these unregistered securities in violation of Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e(a), 77l(a)(1) and control persons in violation of Section 15 of the Securities Act.

O'Neal moved to dismiss the Amended Complaint and strike the proposed expert opinion of Lee Reiners on September 29, 2023 [ECF No. 35], which motions the Astrals Entities later joined [ECF No. 47], and all Settling Defendants filed a Supplemental Motion to Dismiss on April 18, 2024 [ECF No. 83].  On February 27, 2024, the Parties attended an early mediation before Howard Tescher. Although the Parties mediated in good faith, given that the motion to dismiss remained pending, the Parties did not resolve this litigation at that time.

On August 16, 2024, the Court granted in part and denied in part Settling Defendants' Motion to Dismiss. ECF No. 91. First, the "Court denie[d] Defendants' Motion to Dismiss Count I as Plaintiffs have properly alleged that O'Neal is a 'seller' under Section 12." *Id.* at 4. In so ruling, the Court held that Plaintiffs "sufficiently alleged that Astrals [NFTs] and Galaxy tokens are

'securities' subject to federal securities laws." *Id.* Second, the Court agreed with Settling Defendants that Plaintiffs' Section 12 claims for purchase of Astrals NFTs on or before May 23, 2022, were time-barred (*id.* at 10–11) but held the GLXY tokens claims were not (*id.* at 11–13).

On August 16, 2024, the Court denied Settling Defendants' Supplemental Motion to Dismiss, holding that Plaintiffs had "sufficiently pled facts concerning 'the formation of contracts to buy or sell securities, the placement of purchase orders, the passing of titles, or exchanges of money, within the United States.'" ECF No. 95 at 2–3.

On September 12, 2024, Settling Defendants filed their Joint Answer and Affirmative Defenses, asserting various legal defenses to Plaintiffs' claims. ECF No. 97. Most notably, Settling Defendants asserted that: (i) the Astrals Financial Products are not securities; (ii) Plaintiffs' claims based on purchases on or before May 23, 2022 are time-barred; (iii) the federal securities laws do not apply to some or all of the sales of the Astrals Financial Products because those transactions were not U.S. domestic transactions; and (iv) some Plaintiffs' and putative class members' claims are barred by the *in pari delicto* doctrine, as those persons may also be "sellers" of the Astrals Financial Products.

The Parties then began the discovery process, hiring vendors for data collection and scheduling preliminary depositions. Further, the Parties agreed to return to mediate this action once again before Howard Tescher. The Parties then filed a Joint Motion for Brief Stay [ECF No. 105] while settlement discussions and mediation were ongoing. The Court granted the motion and stayed discovery until November 20, 2024. *See* ECF No. 106.

Plaintiffs believe that the Astrals Project will no longer be an ongoing concern in the near future. On October 30, 2024, the Astrals Entities announced on their Discord that "the financial strain has become substantial. Legal fees have exceeded our initial expectations, and the case has stretched on longer than anticipated." The Astrals Entities added that "bankruptcy now appears inevitable. As a result, we will need to remove tokens from the liquidity pool provided by a third party. This has not been an easy decision, and it has placed a significant strain on all of our lives."

Thereafter, a second mediation before Howard Tescher was successful, and thus on November 18, 2024, the Plaintiffs filed the Plaintiffs' *Unopposed* Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of Proposed Settlement Class, and Approval of the Proposed Schedule ("Motion for Preliminary Approval"). ECF 109. The Court then held a

Status Conference on January 13, 2025, and subsequently entered the Order Preliminarily Approving Proposed Settlement on January 14, 2025. ECF No. 119.

### III.   SUMMARY OF SETTLEMENT TERMS

#### A.   The Settlement Class

The Settlement Class is the same as the Class that the Court certified in its Order Preliminarily Approving Proposed Settlement. *Id.* It is defined as "[a]ll persons or entities (i) who, from May 24, 2022, to the date of preliminary approval, purchased Astrals NFTs and/or (ii) who, before the date of preliminary approval, purchased GLXY Tokens. Excluded from the Settlement Class are (i) Settling Defendants and their officers, directors, affiliates, legal representatives, and employees, (ii) any governmental entities, any judge, justice, or judicial officer presiding over this matter, and the members of their immediate families and judicial staff, and (iii) any Person who would otherwise be a Settlement Class Member but who validly requested exclusion pursuant to the 'Opt-Out' provisions below.'" ECF 109-1 ("Settlement Agreement") at ¶ 11. This class definition provides relief on a global scale to victims all around the world.

#### B.   Monetary and Other Relief

The Defendants have agreed to provide up to $11,000,000.00 of monetary relief by establishing a settlement fund from which all approved Class Member Claims, Administration Costs, general release payments, and Class Counsel Fees and Costs are to be paid. "Each qualifying purchase that is approved by the Claims Administrator will receive a payment of up to 100% of its purchase price, dollarized as of the date of the relevant purchase, or a pro rata percentage thereof to the extent the approved Claims exceed the amount of the Settlement Cap." Settlement Agreement at ¶ 13(i). From the $11,000,000.00 cap, a Costs and Fees Payment of $3,000,000 is established wherefrom "Class Counsel will seek Class Counsel Fees and Costs in an aggregate amount not to exceed $2,910,000" to also be used to pay the Costs of Administration and Class Notice, and where $90,000 will be used "to pay Plaintiffs' general release payments, if awarded by the Court, for their individual claims in the amount of $15,000 each." Sett. Ag. at ¶ 16.

### IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice." *Turner v. Gen. Elec. Co.*, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted). For these

reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted).

To grant final approval of the Settlement, the Court must determine that the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e)(2). The 2018 amendments to Rule 23 make clear that the Court should focus "on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the [settlements]." *See* Fed. R. Civ. P. 23(e)(2), 2018 Adv. Cmt. Notes. A settlement should be approved so long as it "is fair, adequate and reasonable and is not the product of collusion." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Accordingly, Plaintiffs analyze the settlement under the framework of Rule 23 and case law governing approval of class settlements, which are substantially similar and overlap. Regardless of the factors, final approval is appropriate.

**A.  Notice to the Class Satisfied the Rule 23, the PSLRA, and Due Process.**

First, under Rule 23(c)(2) and Rule 23(e)(1) of the Federal Rules of Civil Procedure, the notice provided to the Settlement Class fully satisfied the requirements of due process and the Federal Rules. Fed. R. Civ. P. 23. The Court-approved notice plan constituted "the best notice that [was] practicable under the circumstances" because it provided individual notice via email to all identifiable Settlement Class Members using "reasonable effort[s]" and advertisements on the Internet.  *Id.* § 23(c)(2)(B). Here, the Settlement provided for notice published on a Settlement Website and through digital notice, publication in a variety of crypto-related industry publications, placement on the Astrals Entities' Discord page (where they previously published updates about the Astrals Financial Products), and individual notice sent via email to all Settlement Class Members with email addresses reasonably available to the Settling Parties. *See* Ex. A.

In other cryptocurrency-related class action settlements, where, as here, the parties do not have access to all class members' names, addresses, and email addresses, courts have approved similar notice plans. *See, e.g.*, *Balestra v. ATBCOIN LLC*, 2022 WL 950953, at *5 (S.D.N.Y. Mar. 29, 2022) (holding that notice plan published on "Lead Counsel's firm website, on a leading blockchain news and media outlet called CoinDesk.com, and on a Reddit forum dedicated to" the coin in question "constitutes the best notice practicable under the circumstances, and meets the requirements of due process," as defendants stated they "are unlikely to have names, e-mails, or physical addresses for potential class members"); *Hunichen v. Atonomi LLC*, 2021 WL 5854964,

at *11 (W.D. Wash. 2021) (approving notice plan in cryptocurrency class-action settlement with "direct emailing of notice to all class members and supplemental notice through social media publication and a press release, all with links to a website containing the long form notice, documents about the case, an electronic claim form, and contact information for the designated administrator"), *report and recommendation adopted*, 2022 WL 4131590 (W.D. Wash. 2022).

The notice "clearly and concisely" informed Settlement Class Members, in plain and easily understood language, of the nature of the action, the definition of the certified class, the class claims and issues, the terms of the proposed settlement, their right to enter an appearance through counsel, their option to opt out or object, the process for doing so, and the binding effect of the settlement on class members who do not opt out. Fed. R. Civ. P. 23(c)(2)(B); ECF 109-4. Under Rule 23(e)(1), the Court directed notice in a reasonable manner to all class members who would be bound by the proposed settlement after determining that the settlement was likely to receive final approval as fair, reasonable, and adequate. Therefore, the Class Notice satisfied the elements of Rule 23 of the Federal Rules of Civil Procedure.

Second, under 28 U.S.C. § 1715, the Class Action Fairness Act ("CAFA") notice requirements were satisfied. Under 28 U.S.C. § 1715(b), Defendants provided timely notice to the appropriate federal official and to the appropriate state officials in each state where Settlement Class Members might reside. (ECF No. 110). The notices were sent on November 25, 2024, within the statutory 10-day period following the filing of the proposed settlement with the Court, in compliance with CAFA. The notice included all required information under 28 U.S.C. § 1715(b), including copies of the complaint and amended complaint, the proposed settlement agreement, the class notice, and any scheduled judicial hearings. Additionally, the notice provided a clear explanation of class members' estimated proportionate share of the settlement and any agreements related to attorney's fees. Lastly, the settlement complies with 28 U.S.C. § 1715(d), as no final approval order would be entered until more than 90 days after the last notice was served (after February 23, 2025—the Final Approval Hearing is set for April 1, 2025). Therefore, this notice satisfied the requirements of the CAFA. 28 U.S.C. § 1715.

Third, the notice complied with the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* 15 U.S.C. § 78u-4(a)(7). Indeed, the notice included all the required disclosures under the PSLRA, such as the amount of the settlement fund and the average recovery per share, a statement of the claims asserted and the issues involved, and the reasons for

the settlement. Further, the notice described the proposed attorneys' fees and costs, including their total amount and the average per-share impact on recovery, and provided the name, address, and telephone number of class counsel for further information.

### B.  The Settlement is Fair, Reasonable, and Adequate

This class action Settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23. Fed. R. Civ. P. 23(e)(2). To find that it is fair, reasonable, and adequate, Rule 23(e)(2) requires courts to consider the following factors as to whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

*Id.* However, these factors are not exclusive of any other factors nor intended at the time of drafting "to displace any factor [previously developed by a circuit], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Adv. Cmt. Notes. Therefore, the Eleventh Circuit's factors from *Bennett v. Behring Corp.*, used to determine whether a class action settlement is fair, adequate, and reasonable under Rule 23, are still applicable, too. 737 F.2d 982. The *Bennett* factors are:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Id.* at 986.

"In evaluating these considerations, the district court should not try the case on the merits." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990). Instead, "'the district court may rely upon the judgment of experienced counsel for the parties… Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.'"

*Wilson v. EverBank*, 2016 WL 457011 at *6 (S.D. Fla. Feb. 3, 2016) (quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th Cir. 2012)).

Indeed, the Class Representatives and Class Counsel have adequately represented the Class, the proposal was negotiated at arm's length, the relief provided to the Class is adequate, and the proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2). In its broadest sense, the Settlement creates a fund of up to $11 million in monetary benefits to the Settlement Class. This will make available up to the entire amount of claimants' actual potential damages, a percentage of recovery that meets and likely exceeds the standards established by this and other courts. *See, e.g., Behrens v. Wometco Enter. Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair and inadequate . . . A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery[.]"). Additionally, the Court has already granted preliminary approval of the settlement, finding that it fell "within the range of possible approval as fair, reasonable, and adequate" and that the Court was "likely to grant final approval after considering the Rule 23(e) factors at the Final Approval Hearing." Preliminary Approval Order at Par. 2. "Nothing has changed to alter this finding." *Gonzalez v. TCR Sports Broad. Holding*, LLP, 2019 WL 2249941, at *5 (S.D. Fla. 2019).

### a. Rule 23(e)(2)(A): The Class Representatives and Class Counsel have adequately represented the Class.

Rule 23(e)(2)(A) requires a Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "If the court has appointed class counsel or interim class counsel, it will have made an initial evaluation of counsel's capacities and experience. But the focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2)(A-B), 2018 Adv. Cmt. Notes. Here, there is no question that Plaintiffs and Plaintiffs' Counsel have adequately represented the Class.

First, Plaintiffs have adequately represented the Class because Plaintiffs' claims mirror those of the Class, and Plaintiffs have no conflicting interests with any members of the Class. Additionally, Plaintiffs' goal of achieving an ideal settlement with Defendants is directly aligned with other members of the Class who claim to have suffered significant financial losses from the Astrals Project. Further, it must be acknowledged that Plaintiffs' efforts were integral in achieving this Settlement. Plaintiffs regularly communicated with Plaintiffs' Counsel, produced transaction

documents relevant to Astrals Financial Products, remained available to answer any questions related to the Astrals Project that Plaintiffs' Counsel had, and actively participated in settlement discussions. *Burrows v. Purchasing Power, LLC*, 2013 WL 10167232, at *4 (S.D. Fla. Oct. 7, 2013) (finding that the Class Representative "ha[d] dutifully fulfilled his obligations" by "actively participat[ing] in [the] case for the benefit of the Settlement Class"). Indeed, "[t]he Class Representative[s] had significant involvement in all facets of the litigation, including the mediation negotiations that led to the proposed settlement." *See id.* Without Plaintiffs' efforts, there would be no Settlement presented to the Court today. The Class Representatives were actively engaged and understood their duties: they have all aided in the litigation and discovery. Lastly, there can be no reasoned argument that any of the Class Representatives have conflicts antagonistic to the Class. *See e.g., Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class."). Therefore, because Plaintiffs have zealously advocated on behalf of the Class and reached an amicable Settlement with Defendants, Plaintiffs have adequately represented the Class.

Second, Class Counsel have adequately represented the Class because as highly experienced professionals in complex class action securities litigation, Class Counsel diligently and zealously represented the Class. Class Counsel reached a good-faith, arm's-length Settlement with Defendants. *See Williams v. New Penn Fin., LLC*, 2019 WL 2526717, at *3 (M.D. Fla. May 8, 2019) ("The 'conduct of the negotiations' further confirms the adequacy of Class Counsel and Plaintiff's representation of the absent Class Members."). "In addition, further discovery would not likely yield a better result considering the right to opt out has been afforded." *Id.* Plaintiffs' choice of counsel underscores their adequacy. *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 292 (3d Cir. 2010). Class Counsel partially defeated a motion to dismiss, engaged in significant informal discovery, and participated in mediation, after which the Parties reached the Settlement.

Thus, there can be no genuine question that the proposed Settlement Class Representatives are adequate, and that they and Class Counsel have adequately represented the Class.

### b. **Rule 23(e)(2)(B): The Settlement was negotiated at arm's length.**

Under Rule 23(e)(2)(B), the Court considers whether the Settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "Relatedly, one of the *Bennett* factors requires the court to rule out the possibility of fraud or collusion behind the settlement." *In re Blue Cross Blue Shield*

*Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2024 WL 4982979 at 18 (N.D. Ala. Dec. 4, 2024) (citing *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530 (11th Cir. 1994)). "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)(A-B), 2018 Adv. Cmt. Notes.

Here, the Settlement was the result of extensive arm's-length negotiations conducted by sophisticated counsel, where both parties consulted with their own highly qualified experts regarding the claims at issue and where the negotiations followed the briefing and decision of the motion to dismiss stage and the beginning of the discovery process after the end of the PSLRA stay. *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation."). These negotiations were facilitated by respected mediator Howard Tescher, after which the Parties reached a settlement in principle. *See Wilson v. EverBank*, 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (mediator's involvement showed arm's length negotiation process); *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) ("self-dealing contention" was "belied" by involvement of "experienced, court-appointed mediator").

Moreover, Class Counsel has extensive experience in prosecuting complex consumer class actions in this District and around the country and is well-versed in the disputed issues. Class Counsel believes that the Settlement is in the best interests of the Class, and the "Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312–13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'").

Throughout every stage of their negotiations, the Parties weighed the strengths and weaknesses of the Class's claims as well as Defendants' defenses, including consideration of, among other issues, the Court's ruling time-barring purchases on or before May 23, 2022, lack of extraterritorial jurisdiction, and *in pari delicto*. When the Settlement was reached, Class Counsel and Defendants' Counsel were well informed regarding their case and the likelihood of recovery.

As a result, the Parties had an adequate basis for assessing the strengths of the Class's claims and the risks of continued litigation when it entered into the Settlement.

       **c.   Rule 23(e)(2)(C): The relief provided for the Class is adequate considering the totality of circumstances.**

Rule 23(e)(2)(C) requires the Court to consider whether the relief provided for the Class is adequate by considering (i) the "costs, risk, and delay of trial and appeal"; (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (iii) "the terms of any proposed award of attorney's fees, including timing of payment"; and (iv) "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). Here, each of these factors demonstrates that the Class relief is adequate.

First, as for Rule 23(e)(2)(C)(i), the Settlement provides significant relief to Class Members, delivered through a clear claims process. Class Members are able to recover up to 100% of their losses, which is an extraordinary benefit. On the other hand, when compared to the risks and delay of trial and appeal, Class Members could possibly recover nothing. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing plaintiffs' $81 million jury verdict); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. 2011) (granting defendants' motion for judgment as a matter of law following a verdict for plaintiffs). Continued litigation could only lower this recovery, and although Plaintiffs are confident that they could surpass all obstacles, the litigation has not reached the summary judgment or class certification stages, the results of a jury trial are uncertain, and the costs of discovery, experts witnesses, and hours of preparation before even reaching the trial could detract from any recovery. Courts realize that securities litigation "is notably difficult and notoriously uncertain." *Carpenters Health & Welfare Fund v. The Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. 2008).

Second, as for Rule 23(e)(2)(C)(ii), the Settlement provides substantial relief to Class Members, delivered through a clear claims process which includes well-established procedures for evaluating claims submitted by potential Class Members in order to efficiently distribute the Settlement Fund. The Settlement provided for notice published on a Settlement Website and through digital notice, publication in a variety of crypto-related industry publications, placement on the Astrals Discord page, and individual notice sent via email to all Settlement Class Members with email addresses reasonably available to the Settling Parties. For the processing of class-member claims, the Parties have selected and the Court previously approved Strategic Claims

Services to serve as Claims Administrator. *See Rodriguez v. Alfi, Inc.*, No. 21-24232-CV, 2024 WL 1087838 (S.D. Fla. Mar. 11, 2024) (granting final approval for PSLRA settlement which used Strategic Claims Services as claims administrator). Strategic Claims Services will approve qualifying purchases, and each approved qualifying purchase will receive a dollarized payment of up to 100% of its purchase price, dollarized as of the date of the purchase, or a pro rata percentage if the approved Claims exceed the Settlement Cap. Settlement Agreement at ¶ 13. Both Class Members and Settling Defendants have the right to object to the Claims Administrator's decision to pay or reject a claim within 20 days, and if that dispute cannot be resolved, then it will be presented to the Court within 30 days after Strategic Claims Service's final decision. *Id*.

Third, as for Rule 23(e)(2)(C)(iii), as decided under the terms of the Settlement, Class Counsel is applying for $3 million in total for payment of Administration Costs, general release payments ($90,000), and Class Counsel Fees and Costs to compensate Class Counsel for the attorneys' fees and expenses incurred in this litigation. As is discussed below, the proposed fee and cost award of 26.5% ($2,910,000/$11,000,000) of the Settlement Cap is reasonable.

Fourth, as for Rule 23(e)(2)(e)(iv), the Parties have entered into a confidential agreement setting forth certain conditions regarding the number and value of opt-out claims that, if triggered, give the Settling Defendants the option to terminate the Settlement Agreement. These types of "blow provisions" are properly kept confidential: "The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out." *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009). Opt-out blow provisions are standard in securities class action settlements and do not negatively impact the fairness of the Settlement. *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009); *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881 at *7 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted,* 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021); *In re HealthSouth Corp. Sec. Litig.*, 334 Fed. Appx. 248, 253-55 (11th Cir. 2009) (holding that "portions of the Plan were necessarily confidential to avoid revealing details about the blow provision").

### d. Rule 23(e)(2)(D): The Settlement treats Class members equitably relative to each other.

Rule 23(e)(2)(D) requires the Court to consider whether the "proposal treats class members equitably relative to each other." This ensures there is no "inequitable treatment of some class

members vis-à-vis others." Adv. Cmt. Note R. 23. All Class Members are treated equitably and will be paid the amount of their allowed claim based on a simple and equitable distribution formula. The Plan of Allocation as outlined in the Notice states:

> Computations under the Plan of Allocation are only a method to weigh the Claims against one another for the purpose of making *pro rata* allocations of the Net Settlement Amount.
>
> If (i) the Claims Administrator approves a Claim, and (ii) the claimant is still entitled to the Claim after resolution of any disputes about it, the Settlement Class Member will be entitled to a cash recovery. The amount of each Settlement Class Member's recovery will depend on the amount of Astrals NFTs and/or GLXY tokens purchased, the date of those purchases, the price paid, and the sale price (if the Astrals Financial Product was sold), and the extent to which the Net Settlement Amount can pay all valid claims. If the Net Settlement Amount is not sufficient to pay all valid Claims, payments will be prorated among those Claims. The prices for purchases or sales shall be dollarized as of the date of purchase or sale to the extent a cryptocurrency, such as Solana, was used to make the purchase or sale. Specifically, to the extent the Net Settlement Amount suffices to pay all valid Claims:
>
>> 1) if the Settlement Class Member purchased and did not sell an Astrals Financial Product, the Settlement Class Member can recover 100% of the purchase price; and
>> 2) if the Settlement Class Member purchased and sold an Astrals Financial Product, the Settlement Class Member can recover the difference between the purchase and sale price. However, if the Settlement Class Member sold an Astrals Financial Product for a profit (*i.e.*, the sales price exceeded the purchase price), the Settlement Class Member is not entitled to any recovery for that purchase.

ECF 109-4 ("Notice") at 12–13.

The proposed Plan of Allocation does not treat one Class Member's claim as superior over another, and if the Net Settlement Amount is not sufficient to play all the Claims fully, they will be prorated amongst all the Class Members. *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *7 (M.D. Fla. Mar. 23, 2021) (approving analogous plan of allocation for PSLRA settlement and finding that "Rule 23(e)(2)(D) is satisfied because the Settlement treats Settlement Class Members equitably relative to one another via the Plan of Allocation").

### e.  The Remaining *Bennett* Factors Support Final Approval

#### i.  The Substance and Amount of Opposition to the Settlement

The fifth *Bennett* factor is "the substance and amount of opposition to the settlement." *Bennett*, 737 F.2d at 986. At present, there have been no objections or opt-outs which strongly favors final approval. *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422, at *7 (S.D. Fla. 2002) ("The fact that no objections have been filed strongly favors approval of the settlement."); *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941 at *5 (S.D. Fla. 2019).

### ii.   The Stage of Proceedings at Which Settlement was Achieved

The last *Bennett* factor is "the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. Courts consider whether "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Francisco v. Numismatic Guar. Corp.*, 2008 WL 649124, at *11 (S.D. Fla. 2008). "[F]ormal discovery is not a necessary ticket to the bargaining table," and courts reject that formal discovery must occur. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124 (S.D. Fla. 2008) (compiling cases); *Cotton v. Hinton,* 559 F.2d 1326, 1332 (5th Cir.1977) (approving settlement and finding that the Plaintiff was adequately informed despite the fact that very little formal discovery was conducted).

Here, the Settlement was achieved after the Court had ruled on Defendants' Motions to Dismiss the Amended Complaint [ECF Nos. 35, 47], including the Defendants' Supplemental Motion to Dismiss [ECF No. 83]. Once the Court disposed of the Motion to Dismiss [ECF No. 91], the PSLRA discovery stay was lifted and the Parties began to mediate. Litigation lasted longer than one year, and, although formal discovery was prohibited until the Court had ruled on Defendants' motion to dismiss due to the PSLRA's discovery stay, "[Plaintiffs'] Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Numismatic Guaranty Corp.*, 2008 WL 649124, at *11; *Wilson v. EverBank*, 2016 WL 457011 at *7 (S.D. Fla. 2016) (finding litigation for one year to be sufficient time).

## V.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

The Court approved the Notice containing the Plan of Allocation in its Order Preliminarily Approving Proposed Settlement. ECF No. 119. Now, Plaintiffs request final approval of the Plan of Allocation. *See* ECF 109-4 at 12–13. The standard for approval of a plan of allocation of settlement proceeds is the same as for the settlement agreement as a whole—"whether allocation plans are fair, reasonable, and adequate." *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 8181045, at *4 (S.D. Fla. Apr. 20, 2005); *see In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323,

1329 n.2 (S.D. Fla. 2001). "A plan of distribution is [ ] sufficient where ... there is 'a rough correlation' between the settlement distribution and the relative amounts of damages recoverable by Class Members." *In re Terazosin*, 2005 WL 8181045, at *4.

Here, the Plan of Allocation is fair, reasonable, and adequate because, as discussed above, Class Members will receive either their full recovery of the amount they paid for their Astrals Financial Products, or, if claims reach the full amount of the Settlement Cap, their prorated allocation. Additionally, no Settlement Class Members have objected to the Plan of Allocation. *See In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (M.D. Fla. 2007). Therefore, Plaintiffs request that the Court approve the Plan of Allocation.

## VI.   THE COURT SHOULD CERTIFY THE PROPOSED CLASS

The Court has already provisionally certified the Class for settlement purposes on January 14, 2025 in its Order Preliminarily Approving Proposed Settlement [ECF No. 119 at ¶ 3], and nothing has arisen or changed to call that conclusion into question. Plaintiffs still meet the requirements of Rule 23(a) and (b)(3) as argued in Plaintiffs' *Unopposed* Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of Proposed Settlement Class, and Approval of the Proposed Schedule [ECF 109 at 12-13], which was granted in the Order Preliminarily Approving Proposed Settlement. Plaintiffs now respectfully request that the Court affirm its prior determination [ECF No. 119] and grant final certification of the Settlement Class.

## VII.   THE COURT SHOULD AWARD REASONABLE FEES AND COSTS.

### A.   Class Counsel Are Entitled to the Requested Attorneys' Fees and Expenses.

As a preliminary matter, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). For their extensive work prior to the filing of the complaint and throughout the pre-trial and settlement phases of this litigation, Class Counsel seek approximately 26.5% of the settlement value made available to the Settlement Class or the amount of two million nine hundred and ten thousand dollars ($2,910,000) in attorneys' fees, expenses, and administration costs.

Class Counsel is entitled to attorneys' fees for the benefit obtained in the Settlement. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 676 (1980); *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. 2010).

In this Circuit, attorneys' fees "shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (PSLRA securities case). The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process are lower. *See Poertner*, 618 Fed. App'x at 630; *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295–96 (11th Cir. 1999); *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *18 (S.D. Fla. 2015) ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims.").

Moreover, "federal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the twenty-five percent 'benchmark,' even in so-called 'mega-fund' cases." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (awarding fees of 31.5% of settlement fund). Here, the requested percentage falls within the range provided by the Eleventh Circuit. *See Camden I,* 946 F. 2d at 774 (20%–50% of the value provided); *David*, 2010 WL 1628362 at *8 n.15 (20%-50% of common fund is "the customary fee in class actions that result in substantial benefits"). Furthermore, litigation expenses are "entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988). Therefore, Class Counsel are entitled to attorneys' fees and costs.

**B.  The Requested Fee Is Reasonable under the *Camden* Factors**

In 1991, the United States Court of Appeals for the Eleventh Circuit promulgated a list of factors to determine reasonable percentage awards in *Camden I*, 946 F.2d 768, 774 (11th Cir. 1991). Among these factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See id.* at 772 n.3. Further, this Court may also consider the time required to reach settlement, the existence of substantial objections and non-monetary benefits, and the economics of prosecuting a class action. *Id.* at 775. As explained below, the factors set forth in *Camden I* support the award requested here.

a) **The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Economics of Prosecuting a Class Action Support the 26.5% Award.**

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). These factors weigh in favor of awarding Class Counsel approximately 26.5% of the settlement. Class Counsel received no compensation during the course of this litigation and incurred expenses on behalf of the Class, which they risked losing if the Astrals Entities were to prevail in this action. There was a real possibility Class Counsel would receive no compensation, whatsoever. Plaintiffs faced strong obstacles, including the Defendants' multiple attempts to dismiss. These factors together support the 26.5% award of attorneys' fees.

b) **The Fee Request Reflects the Market Rate in Complex, Contingent, Litigation.**

District courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund." *Hanley v. Tampa Bay Sports & Ent. LLC*, No, 2020 WL 2517766, at *6 (M.D. Fla. 2020) (citing *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. 2012) (collecting cases and concluding 33% is consistent with the market rate in class actions)); *Waters*, 190 F.3d at 1295–96 (affirming attorneys' fee award of 33-1/3% to class counsel).

"The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. In private litigation, attorneys regularly contract directly with their clients for contingent fees between 25% and 33%. These percentages are the prevailing market rates throughout the United States for contingent representation. *See id.* at 1341. In making a determination of what constitutes a fair fee, this Court should be guided by such awards. *See also, e.g., Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at *1 (S.D. Fla. Sept. 3, 2020) (awarding one-third of the common fund); *Hanley*, 2020 WL 2517766, at *6 ("Indeed, district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund."); *Wolff*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters,* 190 F.3d 1291 (affirming 33-1/3%). Because Class Counsel are requesting less than 33%, the requested 26.5% attorneys' fee is within the range for complex class action litigation.

Therefore, a fee of approximately 26.5% of the cash value is aligned with the market for class actions. *Aranaz v. Catalyst Pharmaceutical Partners Inc.*, No. 13–cv–23878–UU, D.E. 153 at ¶ 18 (S.D. Fla. 2015); *Howard v. Chanticleer Holdings, Inc.*, No. 12- cv-81123-JIC, D.E. 74 at ¶ 4 (S.D. Fla. 2014) (awarding 33-1/3% of the $850,000 fund); *Malespin v. Longeveron Inc.*, No. 21-CV-23303, 2023 WL 11820921 (S.D. Fla. Oct. 16, 2023) (awarding attorney's fees of 33-1/3% of $1,397,500 in a PSLRA securities class action).

### c)   The Novelty and Difficulty of the Questions at Issue

As previously mentioned, this case presents novel questions of law and issues of fact. Not only are class action matters already generally complex, but this Action was a securities class action, which are also notoriously complex, and in addition the novel nature of cryptocurrency's status under securities laws made this Action even more difficult. Courts acknowledge that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. 2009). In litigating this action, Plaintiffs navigated complex securities laws and the PSLRA, the nuances of digital asset technologies, evolving social media promotion methods, and blockchain data.

### d)   The Skill, Experience, and Reputation of Class Counsel

This complex class action litigation required a high degree of skill and experience. Class Counsel have established their skill, experience, and reputation in the record, and in repeated cases before this court. Class Counsel have many years of experience successfully litigating nationally recognized class actions. For more than thirty years, the lawyers at The Moskowitz Law Firm, PLLC ("MLF") have successfully litigated significant class action and complex commercial cases involving the rights of consumers, investors, and businesses. Class Counsel's reputation, diligence, expertise, and skill are reflected in the results they have achieved.  ECF No. 109-3

"Additionally, in assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1334. The quality of Class Counsel and their achievement in this case is equally shown by the results achieved against formidable defense counsel, Brown Rudnick LLP, which is a reputable law firm that zealously represented Defendants at all steps of the litigation.

### e)   The Result Achieved for the Class

The result achieved is a major factor to consider in making a fee award, and here it is significant and perhaps best establishes the propriety of the requested fee award. *See Hensley v.*

*Eckerhart,* 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342; *Behrens,* 118 F.R.D. at 547–48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). The results here of up to $11 million in cash (including all requested fees and costs) to be paid to all valid claims are excellent. All injured Class Members will be able to receive full relief on a "claims-made" basis until the $8 million is reached (after deduction of the Cost and Fees Payment). As mentioned, the Astrals Entities previously stated that "bankruptcy now appears inevitable." Thus, as a matter of public policy, this settlement, obtained through Class Counsel's zealous advocacy on behalf of Class Members, will provide relief to Class Members for their potentially worthless investments into the Astrals Project, which will likely no longer have a development team behind it. These results are powerful evidence supporting the requested fee award.

### f)   The Time and Labor of Class Counsel

Investigating, prosecuting, and settling the claims here demanded a significant amount of time and labor. The complexity of this case required organization by Class Counsel, including assignment of work and regular meetings and calls to ensure coordinated, productive work efforts to maximize efficiency and minimize duplication of effort. Class Counsel spent over 1,900 hours investigating and litigating the claims of the potential plaintiffs against Defendants in this action. Class Counsel investigated the Plaintiffs' claims and allegations through extensive fact-finding, including the review of many pages of documents in preparation for discovery disclosure, and consultation with an industry expert. Plaintiffs also successfully brought this action under the PSLRA's procedural requirements, filed two complaints complying with the PSLRA's pleading standards, and successfully defended against an extended and supplemented motion to dismiss, all which took large amounts of time and labor. Finally, Class Counsel dedicated hours to informal discovery, two mediations, extensive settlement negotiations and drafting settlement documents, achieving this significant relief. This work required a significant amount of time, labor, and resources. Additional work will be required to finalize the settlement and payments to the Class. Therefore, the requested fee is reasonable and proper.

### g)   Preclusion of Other Employment

When Class Counsel agreed to represent the Plaintiffs in this case, they recognized it would require substantial time and considerable out-of-pocket costs. The hours dedicated to this matter came at the cost of time that could have been allocated to other cases or responsibilities. Indeed,

the time devoted to this case directly precluded Class Counsel from accepting other fee-generating matters. Moreover, this case involved extensive legal research, discovery, motions, and settlement negotiations, all of which demanded substantial hours of work.

      **h) Reaction of the Class to the Settlement.**

To date, the parties have received no objections or opt-out request, which supports the fee request. *See Pinto*, 513 F. Supp. 2d at 1343.

## VIII. THE COURT SHOULD APPROVE THE BROAD, GENERAL RELEASE PAYMENTS TO THE PLAINTIFFS

All six Plaintiffs have agreed to sign in his or her individual capacity a broad, general release in favor of the Settling Defendants in consideration for a $15,000 payment, to be paid separate and apart from any approved claims paid out of the potential fund of $11,000,000. Motion for Preliminary Approval, ECF 109 at 6. These release payments will be paid out of the $3,000,000 requested Cost and Fees Payment so as not to reduce distributions to Settlement Class Members. *See Tweedie v. Waste Pro of Fla., Inc.*, 2021 WL 5843111, at *11 (M.D. Fla. Dec. 9, 2021) (approving a general release payment when paid "separate and apart" from payments to settlement class members, "did not affect the amount of money available to Settlement Class Members," and the claims could independently be negotiated separate and apart from the claims at issue).

Further, the $15,000 payment to each of the Plaintiffs in exchange for a broad, general release in their individual capacity in favor of the Settling Defendants is permissible in this District. *See Sinkfield v. Persolve Recoveries, LLC*, 2023 WL 511195, at *3 (S.D. Fla. Jan. 26, 2023) (approving settlement where class representative was paid, not as "a salary, a bounty, or both," but in exchange for agreeing to a broad release of claims). The Plaintiffs have agreed to release Defendants from potential Nevada state-law claims such as unjust enrichment claims that, if not for the settlement agreement, Plaintiffs would have asserted against Settling Defendants. Settlement Agreement, ECF 109-1 at ¶ 16(a)(iii).

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court grant final approval of the Settlement, including granting approval of the Plan of Allocation and certifying the proposed class, grant Class Counsel's request for attorneys' fees and Plaintiffs' request for General Release Payments, and enter the accompanying Final Approval Order.

Dated: February 18, 2025

Respectfully submitted,

By: */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
Joseph M. Kaye
Florida Bar No. 117520
**THE MOSKOWITZ LAW FIRM, PLLC**
3250 Mary Street, Suite 202
Coconut Grove, FL 33133
Telephone: (305) 740-1423
adam@moskowitz-law.com
joseph@moskowitz-law.com

By: */s/ Jose M. Ferrer*
Jose M. Ferrer
Florida Bar No. 173746
Desiree Fernandez
Florida Bar No. 119518
**MARK MIGDAL HAYDEN LLP**
80 SW 8th Street, Suite 1999
Miami, FL 33130
Office: 305-374-0440
jose@markmigdal.com
desiree@markmigdal.com
*Co-Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the forgoing was filed on February 18, 2025, via the Court's CM/ECF system, which will send notification to all attorneys of record.

By: */s/ Adam Moskowitz*
Adam M. Moskowitz